## REIS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9671.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1944.

Thomas E. Sandidge, of Owensboro, Ky., for petitioner.

Ray Brown, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Harry Baum, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Petitioner, Reis, seeks a review of a decision of the Tax Court finding deficiencies in his income tax for the years 1935 and 1936 in the amounts of $639.93 and $5,933.41, respectively, with interest.

E. D. Evans, E. C. Barrett and J. R. Barrett were the stockholders in Green River Collieries Company, which operated a coal mine at Mogg, Kentucky, and they had approximately $400,000 invested in the property.

On February 28, 1920, petitioner entered into a written contract with these stockholders for employment with the Collieries Company. The contract provided that in addition to receiving his salary, petitioner could purchase stock of the Company to the extent of $10,000, which might, with interest, be paid out of dividends.

In March 1920, petitioner, in furtherance of the contract, moved to Mogg and engaged in the business of the Company. During the latter part of 1920, the Collieries Company went into the hands of a state court Receiver.

In 1922, petitioner and Evans, Barrett and Barrett organized the Green River Fuel Company, a corporation having capital stock of $20,000, divided into 750 shares, for the purpose of selling coal produced from the Collieries Company's mine and other mines. In 1922 and 1923, petitioner bought for $5,000 cash 50 shares of the stock of the Fuel Company. Before December 1927, he became the owner, by gift, of 15 additional shares. T. J. Naughton owned 10 shares and the remaining shares were owned by Evans and the Barretts. Petitioner as General Manager was in active control and supervision of the Fuel Company.

On December 17, 1927, petitioner and one R. J. Fox entered into a contract with Evans and the Barretts whereby they agreed to act as General Manager and Sales Manager respectively of the Fuel Company for ten years, at salaries to be fixed from time to time by the Board of Directors of the Fuel Company. Petitioner's salary was to be not less than $4,500 per year and that of Fox not less than $2,700 per year. Evans, Barrett and Barrett agreed to sell to petitioner and Fox the 675 shares of stock which they then owned in the Fuel Company, for $338,060.09, with interest at 5% from January 1, 1927. The purchase price was to be paid from net earnings or dividends realized each year by the Fuel Company after it had set aside specified amounts for capital and improvements. The stock was reissued, 440 shares to petitioner, 220 shares to Fox, and 5 shares each to Evans and the Barretts. The stock issued to petitioner and Fox was placed in escrow for delivery to them as their indebtedness was reduced. The contract gave petitioner and Fox the right at any time during the ten year period to pay for any part of the stock in cash at the price of $500.90 per share.

In 1928 and 1929, petitioner received a total of $36,650 in dividends which he applied on the purchase price of the stock and received from the escrow agent 28.31 shares of stock. On May 16, 1931, by mutual agreement, the contract was can-

celled and there was an oral agreement that another similar contract might be drawn. The contract was never renewed; but between May 22, 1930 and February 10, 1932, the Barretts and Evans advanced to the Fuel Company $133,800 in varying amounts which were used in the improvement and operation of the Fuel Company. These amounts were evidenced by the Fuel Company's notes, and on October 31, 1933, they aggregated $143,743.37, principal and interest. Petitioner bought these notes for $1,338.00 cash. At that time he owned 94½ shares of the stock of the Fuel Company and was its largest creditor.

On August 4, 1932, the Stephens-Adamson Manufacturing Company brought suit against the Fuel Company to recover an indebtedness of $9,036.92 and to foreclose a mechanics' lien on all its properties to secure the indebtedness. On January 8, 1934, the properties were sold at auction pursuant to a court order to the judgment creditor, the sole bidder, for $5,510.

The Fuel Company had one year from the date of the sale to redeem by the payment of the bid price plus interest and a statutory penalty, but did not exercise its right of redemption; and petitioner purchased the bid of the judgment creditor for $5,000 in cash and assumed the payment of the court costs, and on January 14, 1935, the Commissioner of the court conveyed to petitioner all the assets of the Fuel Company.

Petitioner filed his income tax return for the years involved with the proper collector on or before March 15, 1936 and March 15, 1937, respectively. The Commissioner determined a deficiency for 1935 of $632.17 and for 1936 of $5,892.25. The petitioner sought a redetermination by the Tax Court. The primary question before that court was, whether the assessment of the deficiencies was barred by the limitations of the Revenue Act of 1936. The applicable statute is printed in the margin.[1]

The Court held that the three year period of limitation found in Sec. 275(a) had run; and this is true, because the deficiency notice was not mailed to petitioner until February 7, 1941. However, the Court held that the Commissioner, seeking to bring the deficiency assessment within the five year limitation, Sec. 275(c), had the burden of showing that petitioner had omitted from his returns properly includible gross income to the extent of 25% of the gross income stated in the returns; that the Commissioner had not carried this burden because petitioner's returns had not been introduced in evidence and there was, therefore, no proof of "the amount of gross income stated in the return. * * *" The resultant decision was that there was no deficiency. See Reis, Petitioner, v. Commissioner of Internal Revenue, Respondent, 1 T.C. 9.

The decision was entered on November 17, 1942, and on December 11th following, the Commissioner moved for a reconsideration, or, in the alternative, to reopen the record to receive the tax returns in evidence. On December 29, 1942, the Court granted the motion to the extent of allowing the Commissioner to introduce evidence to show the amount of gross income stated in the returns and leave was given to petitioner to offer proof to meet it, and on February 5, 1943, the Board vacated its prior decision, pending further hearing. On April 5, 1943, the Commissioner placed copies of the returns in evidence and argument was heard.

On June 4, 1943, the Tax Court filed its "Memorandum Findings of Fact and Opinion" and on July 29th following it entered its decision that deficiencies existed as hereinabove indicated.

We think that the determinative question here is, whether the five years' limitation found in Sec. 275(c) supra bars the collection of the adjusted deficiencies. It does not if petitioner omitted from his gross income for the years involved an amount properly includible therein in excess of

---

[1] Sec. 275. Period of Limitation upon Assessment and Collection.

"Except as provided in Section 276:

"(a) General Rule.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

*    *    *    *    *    *

"(c) Omission From Gross Income.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed."
26 U.S.C.A. Int.Rev.Code, § 275(a, c).

25% of the amount of the gross income stated in the returns. The Tax Court found that he had omitted such amounts and there is substantial evidence to support the finding.

Petitioner advertised and sold by piecemeal the properties of the Fuel Company conveyed to him by the court commissioner. He realized from these sales $43,366.75 in 1935 and $35,366.75 in 1936 and reported the sales in his tax returns but deducted the same amounts as his cost of the properties. He proceeded upon the theory that his total cost basis was $200,972.34.

■■ The cost basis is fixed by statute. Sec. 111(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Code, § 111 (a), provides that the gain from the sale of property shall be the excess of the amount realized therefrom over the basis provided in Sec. 113, and Sec. 113(a) provides that "the basis of property shall be the cost of such property." It is obvious that petitioner adopted an incorrect basis. This means cost to the petitioner, which may be entirely different from the "cost history" of the property bought. Detroit Edison Co. v. Com'r, 319 U.S. 98, 102, 63 S.Ct. 902, 87 L.Ed. 1286. We do not undertake to resolve the alleged cost basis of $200,972.34 into the component parts contended for by petitioner. It is enough to say that in the main his claimed basis is the accrued cost of his ill-starred connection with the Fuel Company. This claim is without merit because it disregards the controlling statute.

■ The Court allowed petitioner as a basis the $5,000 which he paid in cash for the property, certain items of taxes and indebtedness which he had assumed, and $35 representing the cost of a locomotive reel which he had purchased and sold in 1935. He added to these amounts an item of $6,463.57. These allowances, so far as they go, are uncontroverted and we find no reason for disturbing them. They aggregate $15,613.95 instead of $78,796.74, the basis allocated by petitioner against the sale of assets. When we ascribe to the word "omits" the meaning given to it in Ewald v. Commissioner, 6 Cir., 141 F.2d 750, it follows that petitioner failed to include in his returns gross income properly includible in excess of 25% of the amount stated therein, and that the five year limitation period, Sec. 275(c) of the Revenue Act of 1936, was not a bar.

■ Petitioner contends that the Tax Court was without authority to reopen the case after it had entered its decision on November 17, 1942. This contention is without merit. The decision did not become final until the expiration of the three months' period for filing a petition for review. Sec. 1140 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1140. It was not final on December 29, 1942, when the court granted the motion to reopen the record and receive the tax returns in evidence, etc.

■■ The court was authorized to adopt rules of practice and procedure [O'-Rear v. Commissioner, 6 Cir., 80 F.2d 473, 475] and under its Rule 19 respondent's motion filed within thirty days after the court's decision on November 17, 1942, was timely, and whether the motion should be granted rested within the sound discretion of the court. We find no merit in the contention that its action in granting the motion was arbitrary.

■ Petitioner asserts that the properties sold by him in 1935 and 1936 were nontaxable capital assets and that the Tax Court erred in holding to the contrary. This matter is determinable by application of Sec. 117(b) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 707, 874, to the facts found by the Court. The Court based its findings upon a stipulation to the effect that after the petitioner had acquired all of the properties of the Fuel Company in the manner hereinabove indicated, he began selling certain itemized portions of the equipment; that he prepared a list of the same for circulation to prospective customers and sold various and sundry items thereof as hereinbefore pointed out. This was sufficient and substantial evidence that the properties so sold were held by petitioner primarily for sale to customers in the ordinary course of petitioner's business and were properly excluded from the statutory definition of capital assets. There is no evidence that the sales were made for the purpose of investing the proceeds in new or other equipment to be used by petitioner in the mining business.

■ Petitioner claims that the Commissioner's allocation of cost of the properties sold by him in 1935 and 1936 (approved by the Tax Court) was purely arbitrary. If we understand his contention, it is, that cost should be determined upon the whole

of the property purchased when he ultimately disposes of it all, regardless of the time element. Such is not the law.

In Heiner v. Mellon, 304 U.S. 271, 275, 58 S.Ct. 926, 928, 82 L.Ed. 1337, the Court said:

"The federal income tax system is based on an annual accounting.[2] Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year."

We find no error in the record and the decision of the Tax Court is affirmed.

---

[2] "Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 152, 75 L.Ed. 383; Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 306, 51 S.Ct. 418, 420, 75 L.Ed. 1049; Woolford Realty Co. v. Rose, 286 U.S. 319, 326, 52 S.Ct. 568, 569, 76 L. Ed. 1128; Brown v. Helvering, 291 U.S. 193, 198, 199, 54 S.Ct. 356, 358, 359, 78 L.Ed. 725; Helvering v. Morgan's, Inc., 293 U.S. 121, 126, 127, 55 S.Ct. 60, 61, 62, 79 L.Ed. 232; Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 497, 498, 58 S.Ct. 673, 82 L.Ed. 975."