**FIFTH AND YORK COMPANY, Plaintiff,**
v.
**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 4305.**

United States District Court
W. D. Kentucky,
at Louisville.

July 8, 1964.

Charles F. Wood, Louisville, Ky., for plaintiff.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

BROOKS, Chief Judge.

Plaintiff seeks to recover for additional taxes it paid subsequent to determination by the Commissioner of Internal Revenue of a deficiency in its income tax liability resulting from the Commissioner's finding that plaintiff had erroneously omitted from its 1954 taxable income one-half of its gross profits attributable to certain sales made in that year.

In 1954, the plaintiff was engaged in the retail sale of automobiles, keeping its accounts and records on the accrual method of accounting. In addition to its regular sales, in 1954 plaintiff also made 96 "Two-for-One" sales, whereby it sold a 1954 Pontiac and further agreed to deliver to the purchaser, between January 1, 1955, and April 30, 1955, a new 1955 Pontiac of the same series and equipment in exchange for the 1954 car. It was stipulated that the purchaser was to return the 1954 car to plaintiff in the same condition as when received with "only normal wear and tear" excluded. The contract price was about $400 higher than the regular sale price of the 1954 car, but when the purchaser exchanged it he was not obligated to make any additional payment. The seller also agreed that the purchaser would be allowed fair market value on the first car plus an additional $500 credit if the seller were prevented by strike, war, or other matters beyond his control from furnishing the second car.

Nine customers exercised their right in 1954 to exchange the 1954 for the 1955 car. During 1955, eighty-six customers received the 1955 model in such exchanges. Plaintiff's records do not show that the remaining one such customer ever exercised his contract right to receive the new car. This suit relates only to the 86 contracts in which delivery of the second car was made in 1955, as plaintiff conceded that all profits from the nine 1954 exchanges belong in 1954 income.

The Two-for-One sales were not segregated in plaintiff's records but were listed chronologically, as made, with its customary sales. Cash received as payment on these sales went into plaintiff's bank account and was used in the regular course of business. The plaintiff's accounting firm, after reviewing the company's records at the end of 1954, set up a "deferred income" account, made adjusting entries in the company books, and credited that account with an amount determined by them to be one-half of the gross profit on the year's Two-for-One sales. Other adjusting entries were then made to return to 1954 income the gross profits pertaining to the exchanges completed in 1954.

The Two-for-One contracts recite that "for and in consideration of the purchase of a new 1954 Pontiac" of the engine number and model listed the purchaser "is to receive from the SELLER a new 1955 Pontiac of the same series and with similar extra equipment in even exchange". The delay in reporting until the following year one-half of the profit on each contract was an attempt to hold that portion of income in abeyance until it could be determined whether a contingency occurred—demand for, and delivery of, the second car. The delivery of the second car was contingent on two factors: (1) that the customer request or demand that the exchange be effected, and (2) that the older car have only normal wear-and-tear. Each customer could demand the exchange or he could retain the first car and simply allow his rights under the contract to lapse. If he did not request the new car, no exchange would be made and the entire profit would fall into the previous year's income. A re-calculation of that year's income and tax due would then have to be made subsequent to a filing of that year's tax re-

turn. The federal income tax system is based on an annual accounting. Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year. Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337 (1937); Reis v. Commissioner, 142 F.2d 900 (6th Cir. 1944). The Government is not required to wait until a later year to determine whether profits have ensued from an entire transaction. Heiner v. Mellon, supra; Reis v. Commissioner, supra. Also see Schaeffer v. Commissioner, 258 F.2d 861 (6th Cir. 1958).

Sections 446(a) and (b) of the Internal Revenue Code of 1954 provide that taxable income shall be computed under the method of accounting regularly used by the taxpayer in keeping his books but if this method does not clearly reflect income the Secretary shall use a method of computation which does do so. The accrual system of accounting, the method used by plaintiff, ordinarily allocates receipts and disbursements to the accounting period in which the receipts are earned and the liabilities incurred regardless of the time of receipt or payment. Under the accrual method it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed the income accrues. As stated in Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200 (1934): Items must be accrued as income when the events occur to fix the amount due and determine liability to pay. Also see North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932); Guarantee Title & Trust Co. v. Commissioner, 313 F.2d 225 (6th Cir. 1963); Schaeffer v. Commissioner, 258 F.2d 861 (6th Cir. 1958). The customer's liability to pay the contract price became fixed at the time he and plaintiff entered into the Two-for-One contract and, conversely, the plaintiff's right to receive the contract price became fixed at the same time by the customer's purchase of the first car;

nor was plaintiff's right to the price lessened because he might become liable on the contract at some future time.

Plaintiff cites Consolidated-Hammer Dry Plate & Film Co. v. Commissioner, 317 F.2d 829 (7th Cir. 1963), as indicative of the law applying to the reporting of income from the sale of personal property. However, the Consolidated case involved a Government contract providing for delivery and acceptance of the finished products, but no inspection or tentative approval was given prior to payments and the amounts paid to the taxpayer-manufacturer did not match progress under the contract. The Court found the partial payments were attributes of a financing arrangement in the nature of a loan, citing 2 Mertens, Law of Federal Income Taxation, page 359, " * * * The basic question is always to determine when a sale is made.

* * *" Where the contract is executory, the payments received thereon are not income until the sale is completed. Watkins v. United States, 287 F.2d 932 (1st Cir. 1961); Woodlawn Park Cemetery Co. v. Commissioner, 16 T.C. 1067 (1951); Veenstra & DeHaan Coal Co. v. Commissioner, 11 T.C. 964 (1948). Where the only obligation remaining on a contract is a contingency not certain to occur, deferral of income is not justified. Schlude v. Commissioner, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963); American Auto. Ass'n. v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961); Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1933). And the fact that the contingency does occur is not a reason to defer income to cover the contingency. The income tax laws must operate on an annual basis, and there is no assurance under either an accrual or cash basis of accounting that there will be complete correlation between items of income and deductions pertinent thereto. The Marquardt Corp. v. Commissioner, 39 T.C. 42 (1962) and cases cited.

In Schlude v. Commissioner, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963),

the latest Supreme Court case allocating deferred income accounts to the year of payment, a dance studio had contracted with its customers to give dancing lessons, leaving it to the student to demand and arrange for the lessons or to simply allow his rights under the contract to lapse. The Court refused to allow deferral of income on the proportion of lessons remaining at the end of the tax year because of the uncertainty that the services would be performed in the subsequent year or at all.

While Schlude, supra, pertained to unperformed services, the Court expressed its reluctance to extend deferral reporting of prepaid income because (1) it had construed, in American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109, the retroactive repeal of Section 452 (which had specifically permitted deferred reporting on payments for *goods or services*) of the 1954 Code as "reinstating long-standing administrative and lower court rulings that accounting systems deferring prepaid income could be rejected by the Commissioner"; (2) Congress has taken a step-by-step approach "in granting the deferral privilege to only limited groups of taxpayers while exploring more deeply the ramifications of the entire problem"; and (3) it defers, where possible, under the long-established policy of the Court, to Congressional procedures in the tax field. These inter-related reasons, together with the fact that in 1958 Congress added Section 455 to the 1954 Code, thereby permitting publishers to defer receipt of income of prepaid subscriptions while refusing to permit income deferral by nonprofit service organizations, show that both Congress and the Supreme Court are acting deliberately and cautiously on the problems of prepaid income deferral for goods as well as for services. Inasmuch as Congress has not expressly provided for deferral of income from the sale of goods or personal property and in view of the expressions of the Supreme Court in Schlude, supra, it is concluded that the Commissioner prop-

erly exercised his discretion in allocating the entire profits from the Two-for-One sales to the year 1954.

Judgment dismissing plaintiff's complaint is this day entered.