**HAGEN ADVERTISING DISPLAYS, INC., an Ohio corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18015.**

United States Court of Appeals
Sixth Circuit.

March 3, 1969.

Robert O. Leming, Cincinnati, Ohio, for petitioner; Rolf, Dolle, Rueger, Mongan & Leming, Cincinnati, Ohio, on brief.

Louis M. Kauder, Atty., Department of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., on brief.

Before EDWARDS, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is a petition to review a decision of the Tax Court upholding the Commissioner's determination that taxpayer must include advance payments from its customers in its gross income in the year of receipt.

Hagen Advertising Displays, Inc., petitioner-taxpayer, is a manufacturer of advertising signs with its principal office in Cincinnati, Ohio. Many of petitioner's customers are engaged in establishing new dealerships throughout the country and require a continuous supply of illuminated, plastic, dealer-identification signs. It was the practice of such customers, during the years in question, to estimate their requirements and to place "blanket orders" with petitioner covering periods of from one to three years. Upon receipt of a blanket order, taxpayer would begin to manufacture the required signs. In general, however, taxpayer did not complete a particular sign until shipping instructions were received from the customer for whom it was being made specifying the dealer to

whom it was to be delivered; the extent of completion prior to that time depended on the nature of the sign in question. Shipping instructions were received intermittently, on a sign-by-sign basis, according to the needs of the customer.

Generally, taxpayer's customers did not make advance payments and, with certain limited exceptions, there was no requirement or understanding that they do so. They were billed for each sign within a day or two after it was shipped. However, some customers, on their own initiative, elected to pay for all or a portion of their blanket orders prior to delivery. These customers subsequently received a "memo billing" when each sign for which such payments had been made was shipped. In addition, when a blanket order had been outstanding for an extended period of time (usually twelve months) and the customer had not directed the shipment of some of the signs included therein, petitioner sometimes billed the customer for the undelivered signs. Advance billings of this latter type, however, were infrequent.

Until 1961, petitioner kept the amounts received as advance payments in a special bank account. In that year this account was closed out and the advance payments were comingled with taxpayer's other receipts and were used for current operating expenses and general corporate purposes. On its federal income tax returns for the years 1960 to 1962, petitioner deferred inclusion of advance payments in sales income until the year in which each sign was delivered. The Commissioner determined that these amounts should have been included in taxpayer's income in the year in which they were received and, accordingly, assessed deficiencies for the years 1960 and 1962, and determined an overassessment for 1961. The Tax Court, upon petition for redetermination of petitioner's taxes, upheld the Commissioner's action. Hagen Advertising Displays, Inc., 47 T.C. 139 (1966).

This petition requires us to determine whether a taxpayer who uses the accrual method of accounting and who receives unconditional[1] advance payments for merchandise must report such payments, for tax purposes, in the year of receipt instead of deferring such reporting until the year in which the merchandise is delivered. In making this determination we must consider first whether any part of the unconditional advances constituted income for an accrual-basis taxpayer. In both Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963), and American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961), reh. denied, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961), the Supreme Court considered the propriety of the deferral of inclusion of unconditional prepayments by an accrual-basis taxpayer until the year in which the services for which the advances were received would be performed. The Court, relying in part on its interpretation of the implications of Congress' retroactive repeal of Section 452 of the Internal Revenue Code of 1954,[2] held that deferral would not be permitted. Admittedly, these cases are distinguishable from the instant case since amounts received for the sale of services constitute gross income at the time they are received regardless of the matching of related expense deductions.[3] In the instant case, on the other hand, the match-

---

1. The Tax Court stated in this regard: "Insofar as this record shows, under no circumstances would petitioner be required to return any portion of the advance payments, but would, in accordance with its contract, be required to deliver signs called for by the contract upon the customer's direction that this be done." 47 T.C. at 146.

2. Section 452 was repealed by Pub.Law 74, Sec. 1, approved June 15, 1955, effective with respect to taxable years beginning after December 31, 1953, and ending after August 16, 1954.

3. Int.Rev.Code of 1954, § 61(a) provides, in part:

Except as otherwise provided in this subtitle, gross income means all in-

ing of gross receipts and related costs of goods sold is necessary in order to determine the amount of gross income, as distinguished from mere returned capital, which taxpayer has received.[4] However, prior to the repeal of Section 452 deferral would have been permissible in the instant case since the sale of both services *and goods* fell within the purview of that section's provisions. The implications of its repeal by Congress are, therefore, apposite in the instant case.

In assessing the implications of this legislative action, the Supreme Court stated in *American Automobile Ass'n.*:

> Whether or not the Court's judgment in *Michigan* controls our disposition of this case, there are other considerations *requiring* our affirmance. They concern the action of the Congress with respect to its own positive and express statutory authorization of employment of such sound commercial accounting [deferral] practices in reporting taxable income. * * * [Congress] introduced into the Internal Revenue Code of 1954 § 452 and § 462, which specifically permitted essentially the same [deferral] practice as was employed by the Association here. Only one year later, however, in June 1955, the Congress repealed these sections retroactively. * * *

> To say that, as to taxpayers using such systems, Congress was merely declaring existing law when it adopted § 452 in 1954, and that it was merely restoring unaffected the same prior law when it repealed the new section in 1955 for good reason, is a contradiction in itself, "varnishing nonsense with the charm of sound." Instead of constituting a merely duplicative creation, the fact is that § 452 for the first time specifically declared peti-

tioner's [deferral] system of accounting to be acceptable for income tax purposes, and overruled the long-standing position of the Commissioner and courts to the contrary. *And the repeal of the section the following year, upon insistence by the Treasury that the proposed endorsement of such tax accounting would have a disastrous impact on the Government's revenue, was just as clearly a mandate from the Congress that petitioner's system was not acceptable for tax purposes.* * * *

To recapitulate, it appears that Congress has long been aware of the problem this case presents. In 1954 it enacted § 452 and § 462, but quickly repealed them. Since that time Congress has authorized the desired accounting only in the instance of prepaid subscription income, which, as was pointed out in *Michigan,* is ratably earned by performance on "publication dates after the tax year." [Automobile Club of Mich. v. Commissioner of Internal Revenue] 353 U.S. 180, 189, note 20 [77 S.Ct. 707, 712, 1 L.Ed. 2d 746]. It has refused to enlarge § 455 to include prepaid membership dues. At the very least, this background indicates congressional recognition of the complications inherent in the problem and its seriousness to the general revenue. We must leave to the Congress the fashioning of a rule which, in any event, must have wide ramifications. The Committees of the Congress have standing committees expertly grounded in tax problems, with jurisdiction covering the whole field of taxation and facilities for studying considerations of policy as between the various taxpayers and the necessities of the general revenues. The validity of the long-established

come from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items * * *.

4. Treas.Reg. § 1.61–3(a) (1960) provides in part:

Gross Income Derived from Business. (a) In general. In a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources.

policy of the Court in deferring, where possible, to congressional procedures in the tax field is clearly indicated in this case.[12]

> 12. In 1955 it was estimated that transitional loss of revenue under § 452 and § 462, repealed that year, would total in excess of a billion dollars. H.R.Rep.No. 293, 84th Cong., 1st Sess. 3. That this impact on the revenue continues to be an important factor in congressional consideration of the problem is indicated by the observation of the House Committee on Ways and Means that a "transitional rule" is necessary "to minimize the initial revenue impact" of the measure currently pending. H.R.Rep.No. 381, 87th Cong., 1st Sess. 4. That the system used by petitioner here is, perhaps, presently not uncommon may be indicated by the fact that during this Term alone several cases involving similar systems have reached this Court.
>
> \*   \*   \*   \*   \*   \*

367 U.S. at 694–697, 81 S.Ct. 1727, 1731–1732, 6 L.Ed.2d 1109 and n. 12 (emphasis added, footnotes other than note 12 omitted).

We are persuaded by this language that at least a portion of the advance payments constituted gross income in the year of their receipt, even though petitioner is an accrual-basis taxpayer. Fifth & York Co. v. United States, 234 F.Supp. 421 (W.D.Ky.1964); Chester Farrara, 44 T.C. 189 (1965). We are

aware that in Beacon Publishing Co. v. Commissioner of Internal Revenue, 218 F.2d 697 (10th Cir.1955), and Bressner Radio, Inc. v. Commissioner of Internal Revenue, 267 F.2d 520 (2d Cir.1959), a contrary result was reached on this question, but those cases were decided before the Supreme Court's decisions in Schlude v. Commissioner, *supra*, and American Automobile Ass'n v. United States, *supra*. Furthermore, although *Beacon* and *Bressner* were expressly relied on by the circuit court in Schlude v. Commissioner of Internal Revenue, 283 F.2d 234, 240 (8th Cir.1960), on appeal the Supreme Court made no affirmation of the decisions in those cases.[5] Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963). If the Court agreed with those decisions, its discussion of the implications of the retroactive repeal of § 452, *supra*, was mere surplusage.[6] The emphasis which the Court gave to those implications, however, make us unwilling to adopt such a view.[7]

We note that our consideration of this question is not influenced by the so-called "claim of right doctrine" which was held inapplicable in *Beacon* and *Bressner* and which, as was observed by Justice Stewart in his dissenting opinion in *American Automobile Ass'n.*, determines only whether amounts whose own-

5. In Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), reh. denied, 353 U.S. 989, 77 S. Ct. 1279, 1 L.Ed.2d 1147 (1957), a case involving facts similar to those present in *Schlude* and *American Automobile Ass'n*, the Supreme Court stated: "We express no opinion upon the correctness of the decisions in *Beacon* or *Schuessler*." 353 U.S. at 189, 77 S.Ct. at 713 (note 20). In that case, however, the Court did not find it necessary to consider the implications of the retroactive repeal of § 452.

6. The other ground relied on in those cases was the fact that the taxpayers' methods of accounting were inaccurate. It has long been clear that this is sufficient to allow the Commissioner to reject a taxpayer's method of computing taxable income. *See* Automobile Club of Michigan v. Commissioner of Internal Revenue, *supra*. § 446 of the Internal Revenue Code of 1954 provides in part:

> (a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
>
> (b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

7. To the extent Artnell Co. v. Commissioner of Internal Revenue, 400 F.2d 981 (7th Cir. 1968), is inconsistent with our decision, we decline to follow it.

ership is disputed are includible in gross income and not whether "\* \* \* such funds must necessarily be reported by an accrual-basis taxpayer as income in the year of receipt, whether or not then earned." 367 U.S. at 700, 81 S.Ct. at 1734.

Finally, petitioner relies on Consolidated-Hammer Dry Plate & Film Co. v. Commissioner of Internal Revenue, 317 F.2d 829 (7th Cir.1963), Watkins v. United States, 287 F.2d 932 (1st Cir. 1961), Woodlawn Park Cemetery Co., 16 T.C. 1067 (1951), and Veenstra & De-Haan Coal Co., 11 T.C. 964 (1948). The advance payments in those cases, however, were received either conditionally or pursuant to a loan-financing arrangement.

■ The second question presented by this petition is what portion of the advance payments must be included in gross income in the year of receipt. Taxpayer correctly points out that inclusion of the entire amount of the advances, without an allowance for related costs of goods sold, would constitute taxation of the return of capital. Lela Sullenger, 11 T.C. 1076, 1077 (1948), not acquiesced in, 1949-1 Cum.Bull. 6, appeal dismissed, (5th Cir. 1950), acquiesced in, 1952-2 Cum.Bull. 3. But the economics of the marketplace requires that a manufacturer earn a profit on the merchandise which it sells, at least in the long run, in order to remain in existence. We must assume, therefore, that in general petitioner sells signs for more than their cost of manufacture, and, in the absence of any contention to the contrary, that a portion of the advances did constitute gross income in the year of receipt.

■■ Petitioner seeks to defer inclusion of this portion until a tax year subsequent to that of its unconditional receipt because until each sign is delivered the cost of its manufacture, which must be subtracted from the sale price in order to determine gross income,[8] cannot be determined. This contention is without merit. Taxpayer has made no attempt to estimate the cost of goods sold of the signs for which advances were received.[9] *Cf.* Schuessler v. Commissioner of Internal Revenue, 230 F.2d 722 (5th Cir.1956); Harrold v. Commissioner of Internal Revenue, 192 F.2d 1002 (4th Cir.1951). *See* Hilinski v. Commissioner of Internal Revenue, 237 F.2d 703 (6th Cir.1956). Since it is clear that taxpayer, not the Commissioner, must bear the burden of reporting in the proper tax year amounts which it claims are costs of goods sold, taxpayer cannot complain in this petition for review of the consequences of its failure to do so.

For the reasons stated above the decision of the Tax Court is affirmed.

8. *See* note 4, *supra.*

9. The Tax Court stated in this regard:
Petitioner makes no argument that either its cost of goods sold or inventories are incorrectly computed, and respondent has made no change in either amount as reported by petitioner for either year here in issue. 47 T.C. at 147.