BAY STATE GAS COMPANY (SUCCESSOR BY CONSOLIDATION TO BROCKTON TAUNTON GAS COMPANY AND THE FORMER BAY STATE GAS COMPANY, PREVIOUSLY NAMED NORTHAMPTON GAS LIGHT COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2987–77.    Filed December 29, 1980.

411

*Joseph E. Bachelder III* and *Eileen K. Wilcox,* for the petitioner.
*David N. Brodsky,* for the respondent.

RAUM, *Judge:* The Commissioner determined the following deficiencies in petitioner's[1] income tax:

| Year[2] | Amount |
|---|---|
| 1971 | [3]$14,561.16 |
| 1973 | 129,065.78 |

Petitioner is an accrual basis calendar year public utility engaged in the distribution of gas. It generally bills its custom-

---

[1]Petitioner is the corporate successor to two corporations, Old Bay State Gas Co. and Brockton Taunton Gas Co., which were the taxable entities in existence at the end of 1973. The separate identities of these corporations and their predecessors in the years in issue are of no importance herein, and they will be referred to in the aggregate as the petitioner or Bay State, notwithstanding that the 1971 deficiency related to one of those corporations, that the 1973 deficiency related to the other, and that separate notices of deficiency were sent in respect of each.

[2]The Commissioner also determined a $1,983.41 deficiency in petitioner's income tax for 1968, but petitioner has not requested review of that determination.

[3]The 1971 deficiency is principally the result of a reduction in a net operating loss carryback, the amount of which will be determined by our decision as to 1973. The only other adjustment adverse to petitioner for 1971 is not in dispute.

ers monthly on the basis of gas consumed as determined by bimonthly meter readings and estimates for alternate months as of a date corresponding to the bimonthly reading date. Some residential customers, however, elect to be billed in equal monthly installments (budget billing) during the 10-month "heating season" (September through June); such installments are computed by estimating gas consumption for the entire 10-month period, followed by an adjustment at the end of that period to reflect actual consumption. For accounting purposes, the meters of budget billing customers are read bimonthly, and estimates are made on alternate months in the same manner as in the case of other customers, and petitioner accrues its revenues attributable to gas deliveries to all customers (regular and budget billing alike) as of the bimonthly meter reading or estimate date. Thus, under this "cycle meter reading method," petitioner does not report as revenue for the current year any amounts attributable to gas deliveries during that portion of December following the final bimonthly reading or estimate date for that year, and, instead, treats such amounts as accrued in the following year. At issue is whether the Commissioner abused his discretion under section 446(b), I.R.C. 1954, in determining that petitioner's method of reporting income from the sales of gas to its budget billing customers does not clearly reflect income, particularly in respect of charges to such customers for gas consumed after the December meter reading or estimate date.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference.

Petitioner Bay State Gas Co. (Bay State) is a Massachusetts corporation engaged primarily in the business of gas distribution. Petitioner supplies gas to customers in its franchised service area in Massachusetts in accordance with chapter 164 of the Massachusetts General Laws and is subject to regulation by the Massachusetts Department of Public Utilities. The company's principal offices are at Canton, Mass.

Petitioner is on the accrual method of accounting and recognizes revenue from all its customers on the basis of the "cycle meter reading method" for financial, regulatory, and tax-

reporting purposes. Under that method, each customer is assigned a certain day of the month, and petitioner's employees read the customer's meter bimonthly on that assigned day. During interim months, the customer's consumption of gas is estimated as of the same day. Pursuant to the cycle meter reading method, petitioner accrues charges for gas consumption as income on the date the customer's meter is read or estimated.

The meter reading employees generally turn in the meter reading data to the company at the end of the business day on which the meter is read. This information is then entered in a computer which applies the appropriate pricing based upon rates approved by the Massachusetts Department of Public Utilities, and a bill is printed based on the computerized data. In the ordinary course, the bill is mailed to the customer 4 days after the reading of the meter. Revenue is accrued on the basis of, and as of, the meter reading date.

In the months alternate to the months in which a customer's meter is read, amounts of a customer's usage are determined on a meter "estimate" date (corresponding to the bimonthly meter reading date) based upon prior meter readings, weather conditions, and other data relevant to customers. The estimated charge is accrued as revenue, and a bill is sent to the customer in the same manner as the months when the meter is actually read.

Although Bay State bills its customers on a monthly basis, the rendering of a bill is not the event which determines the time of accrual of revenue by petitioner in respect of any of its customers. The cycle meter reading date is the critical date for accruing revenue on the basis of an actual reading or estimate. Hence, under the cycle meter reading method, Bay State's revenues attributable to gas deliveries to customers subsequent to the meter reading date in December of each year (or the December meter estimate date for those customers whose meters are read in November) are not recognized until the following taxable year.

Petitioner's method of accounting was subject to approval of the Massachusetts Department of Public Utilities during the years in issue, and cycle meter reading is recognized by the department as an appropriate method of accounting. Required reports filed with the Securities and Exchange Commission were filed using the cycle meter reading method of recognizing revenue. The cycle meter reading method is employed by

approximately 80 percent of the utility industry, and it is recognized by accountants specializing in public utility accounting as an accounting practice complying with generally accepted accounting principles.

As noted above, Bay State customers are customarily billed for amounts of gas consumed in accordance with the cycle meter reading method. However, Bay State offers its residential customers an alternative payment plan known as "budget billing." Approximately 30 to 40 percent of petitioner's residential customers participate in the budget billing plan. In administering the budget billing program, petitioner estimates a customer's probable gas usage for the 10-month heating season (September through June) based upon actual usage in prior years, and other statistical "references," and divides this amount by 10 (the number of heating-season months) to arrive at an even monthly payment. The monthly payment bears no relation to the price of the gas actually consumed in any particular month, and the budget billing plan does not purport to estimate actual usage on a monthly basis. However, budget billing customers, like other customers, are assigned a cycle meter reading date on which their meters are actually read, and revenue is accrued by the company on the basis of such meter readings, as is the case with regular customers. Bay State does not record the budget bill as an account receivable or in any way recognize it as revenue.

Actual fuel usage and the amount that would be due for such usage appears on the customer's monthly bill as well as the budget bill amount. A customer may withdraw from the budget billing program at any time, either by request or by simply not paying the budget amount. If a customer does not pay a monthly budget bill, the company rebills the customer for the amount of gas actually consumed. After withdrawing from the budget billing program, the customer receives a regular monthly bill based on actual or estimated consumption as of the cycle meter reading date.

If a customer remains on the budget billing plan for the entire heating season, cost adjustments are made at the end of the season, usually in July, to reconcile amounts received from the customer under the budget billing plan with amounts due the utility for gas actually delivered and consumed. If a customer has consumed more gas then he has paid for, an additional bill is

rendered. If a customer has paid for more gas than he has consumed, a credit toward future bills will be made or, if the customer so requests, cash will be paid.

The budget billing program is entirely voluntary on the part of the customer. Petitioner may not require the customer to pay the budget amount instead of the amount due for actual usage in any month. Under the rules and regulations established by the Massachusetts Department of Public Utilities, petitioner can proceed against a customer only upon the customer's failure to pay for the amount of the gas actually consumed.

The Commissioner determined that as to petitioner's budget billing customers, its method of accounting did not clearly reflect income. Accordingly, he increased petitioner's 1973 income by a total of $594,426,[4] which is described in the deficiency notice as "the excess of the amount of * * * budget billings during 1973 over the monthly charges accruable for said year for gas actually consumed, to the extent such excess is attributable to charges for gas distributed through the last day of 1973."

## OPINION

Petitioner is an accrual basis taxpayer with a taxable year ending on December 31. It uses the cycle meter reading method for recognizing revenue from sales of gas to its customers and records revenue from each of its customers on the appropriate cycle meter reading or estimate date[5] of each month. Thus, if a customer's cycle meter reading date is the 20th of each month, petitioner would record revenue from that customer's usage of gas as of the 20th of each month, based either on an actual bimonthly meter reading or on an estimate of the customer's gas usage in months between meter readings. However, at yearend, petitioner does not recognize any revenue based on its customers' usage of gas between the December cycle meter reading date and the end of the year. Instead, recognition of the revenues from delivery of gas between the December cycle

---

[4] Of this total, $339,492 was attributable to Brockton Taunton Gas Co., and $254,934 was attributable to Old Bay State Gas Co.

[5] The estimate date in the alternate months corresponds with the date in the months that the meter is actually read, and for convenience, both will sometimes be referred to indiscriminately as the cycle meter reading date, since nothing herein turns on any difference between them.

meter reading date and the yearend is deferred until the January cycle meter reading date. Thus, if a customer has his meter read on December 20 of the current year, petitioner would recognize on January 20 of the next year revenue from the customer's usage of gas from December 20 of the current year to the following January 20, the next cycle meter reading date; it would not recognize in the current year the revenue from deliveries of gas from December 20 through December 31 of the current year.

The Commissioner has ruled that accrual basis utilities which do not have a budget billing program may thus defer to the following year the recognition of revenue from sales of gas in the current taxable year in accordance with the cycle meter reading method described above, despite the fact that at least some of the utilities' costs for the gas distributed after the last cycle meter reading date may be taken into account in the current year when such costs are incurred. See Rev. Rul. 72–114, 1972–1 C.B. 124, 125; cf. Rev. Rul. 71–429, 1971–2 C.B. 217; Rev. Rul. 65–287, 1965–2 C.B. 150. However, for utilities utilizing a budget billing procedure similar to that made available by petitioner, the Commissioner requires a modification of revenue recognition practices. If aggregate heating-season budget billings prior to the closing of the taxable year exceed the monthly charges for a customer's actual usage of gas, then the reasonably estimated charges for gas used by the customer through the end of the taxable year must be accrued as income in that year to the extent that such charges do not exceed the aggregate budget billings. For example, suppose that one of petitioner's customers on the budget billing program has been billed for $400 (at the rate of $100 a month) during the first 4 months of the heating season (September through December) and has used only $390 in gas as of his cycle meter reading date of December 20. If reasonably estimated charges for the customer's usage of gas between December 20 and December 31 are $25, the Commissioner would require petitioner to accrue an additional $10 as income in that year ($400 - $390) and to recognize the remaining $15 as of the January 20 cycle meter reading date in the following year. If the cost of the customer's estimated usage of gas through December 31 was only $5, the Commissioner would require that this sum be included in income, rather than the $10

difference between total budget billings and gas usage through the last cycle meter reading date.

Section 446(a), I.R.C. 1954, provides that "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(c) further provides that acceptable methods of accounting for computing taxable income include "an accrual method" and "any combination of * * * methods permitted under regulations prescribed by the Secretary." However, pursuant to section 446(b), "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary * * * , does clearly reflect income."

Petitioner recognizes, as it must, that these statutory provisions provide the Commissioner with broad discretion in determining whether particular methods of accounting clearly reflect income. See, e.g., *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532 (1979); *United States v. Catto*, 384 U.S. 102, 114 (1966); *Commissioner v. Hansen*, 360 U.S. 446, 467 (1959). However, petitioner contends that its method of accounting does clearly reflect income and seeks to invoke the established principle that the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects income merely because the Commissioner considers an alternate method to more clearly reflect income. See, e.g., *Auburn Packing Co. v. Commissioner*, 60 T.C. 794, 798–800 (1973); *Garth v. Commissioner*, 56 T.C. 610, 618, 623 (1971).

In urging that its method of accounting clearly reflects income, petitioner first points out that, at least apart from budget billing practices, the cycle meter reading method of accounting has been recognized by the Commissioner as a proper method of accounting. It then proceeds to argue that the so-called budget "bill" is not a bill at all since it does not represent a legally enforceable obligation and is not treated as an account receivable; that, like all other customers, those electing the budget billing program are legally obligated to pay only for the amount of gas actually consumed; and that it is an abuse of the Commissioner's discretion to require petitioner to account for revenue from its budget billing customers on a method different from that applied to all its other customers in respect of gas consumed during the final fractional portion of December.

Petitioner further contends that its cycle meter reading method has been consistently applied with respect to all of its customers in accordance with generally accepted utility industry accounting principles for both financial and regulatory accounting purposes; and it maintains that its cycle meter reading method is therefore a permissible accounting method under the applicable Treasury regulations.[6]

The Government contends that under the strict accrual method of accounting, petitioner would normally be required to recognize revenue from all sales of gas to customers through the end of the taxable year, regardless of whether such sales took place after the December cycle meter reading date, since all events have occurred which fix petitioner's right to the income and the amount of such income can be estimated with reasonable accuracy. In explaining the Commissioner's acceptance of the cycle meter reading method in Rev. Rul. 72–114, 1972–1 C.B. 124, the Government states that such method "clearly reflects income because * * * the meter reading and billing cycle method is the agreed basis of payment for the goods delivered

---

[6]Sec. 1.446–1, Income Tax Regs., provides in relevant part as follows:

Sec. 1.446–1 General rule for methods of accounting.

(a)(2) It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions of practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

* * * * * * *

(c) *Permissible methods*—(1) *In general.* Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting:

* * * * * * *

(ii) *Accrual method.* Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Under such a method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations. For example, a taxpayer engaged in a manufacturing business may account for sales of his product when the goods are shipped, when the product is delivered or accepted, or when title to the goods passes to the customer, whether or not billed, depending upon the method regularly employed in keeping his books.

between the parties." But the Government argues that a different method of accounting is called for with respect to petitioner's budget billing customers, since the "agreed" method of payment utilized by petitioner and its budget billing customers purportedly differs from the payment method utilized by petitioner's other customers. The Government would treat petitioner's budget bills as representing amounts "due and payable" and would generally require their inclusion in income as of the time the bill is issued. See *Cox v. Commissioner*, 43 T.C. 448, 456 (1965). However, to the extent that the budget bills represent amounts "due" for gas to be delivered in the following taxable year, the Government would not require these amounts to be recognized as income until the year in which the gas is delivered, in accordance with the applicable Treasury regulations permitting taxpayers to defer recognition of "advance payments" for goods or services to be provided in a future taxable year.[7] If its position is approved, the Government concedes that petitioner would be entitled to an adjustment pursuant to section 481, I.R.C. 1954.

In Rev. Rul. 72–114, 1972–1 C.B. 124, the Commissioner

---

[7]Sec. 1.451–5, Income Tax Regs., provides in relevant part as follows:

Sec. 1.451–5 Advance payments for goods and long-term contracts.

(a) *Advance payment defined.* (1) For purposes of this section, the term "advance payment" means any amount which is received in a taxable year by a taxpayer using an accrual method of accounting for purchases and sales * * * pursuant to, and to be applied against, an agreement:

(i) For the sale or other disposition in a future taxable year of goods held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *

*      *      *      *      *      *      *

(2) For purposes of subparagraph (1) of this paragraph:

*      *      *      *      *      *      *

(ii) Amounts due and payable are considered "received".

*      *      *      *      *      *      *

(b) *Taxable year of inclusion.* (1) Advance payments must be included in income either—

(i) In the taxable year of receipt; or

(ii) Except as provided in paragraph (c) of this section,

(a) In the taxable year in which properly accruable under the taxpayer's method of accounting for tax purposes if such method results in including advance payments in gross receipts no later than the time such advance payments are included in gross receipts for purposes of all of his reports (including consolidated financial statements) to shareholders, partners, beneficiaries, other proprietors, and for credit purposes, or

(b) If the taxpayer's method of accounting for purposes of such reports results in advance payments (or any portion of such payments) being included in gross receipts earlier than for tax purposes, in the taxable year in which includible in gross receipts pursuant to his method of accounting for purposes of such reports.

determined that the cycle meter reading method clearly reflects income with respect to customers of a utility billed on the basis of the cycle meter reading or estimate. Since we cannot ascertain any meaningful distinction between the payment obligations of petitioner's budget billing customers and its other customers, we find that the Commissioner abused his discretion in requiring a change in petitioner's method of accounting for gas sold to budget billing customers, with but a single exception. We approve the Commissioner's position—and indeed petitioner concedes its correctness—to the extent that a budget billing customer has in fact paid his December "bill" during that month and only to the extent that he has thus paid for gas consumed through December 31.[8] The record indicates that only about one-fifth of the budget billing customers in fact pay their December "bills" during the current year. The controversy before us is thus narrowed to the situation involving the charges incurred after the December meter reading date by those budget billing customers who have not in fact made payment in December for such charges.

The Government argues that petitioner's method of accounting for revenues from budget billing customers does not clearly reflect income because such customers have not only consumed gas after the December cycle meter reading or estimate date but also have been billed for such gas. However, this misconstrues the nature of the bill sent to petitioner's customers who elect participation in the budget billing program.

Under the billing and termination procedure regulations of the Massachusetts Department of Public Utilities,[9] no amounts

---

[8]See *Hagen Advertising Displays, Inc. v. Commissioner*, 47 T.C. 139, 148–149 (1966), affd. 407 F.2d 1105, 1109–1110 (6th Cir. 1969); *Farrara v. Commissioner*, 44 T.C. 189, 191 (1965); cf. sec. 1.451–5, Income Tax Regs.; *Schlude v. Commissioner*, 372 U.S. 128, 136 (1963). Thus, if a customer *actually pays* petitioner $400 prior to the end of the taxable year, and has used only $320 worth of gas as of his December cycle meter reading date, and uses $50 worth of gas between the December cycle meter reading date and the end of the taxable year, then petitioner would be required to include $50 in income in the current taxable year. However, since the remaining $30 will be a payment for gas to be provided in the next taxable year, this amount would be an "advance payment" as defined in sec. 1.451–5(a)(1)(i), Income Tax Regs., *supra* note 7, and its recognition as income can be deferred until the next year when the gas is supplied pursuant to sec. 1.451–5(b), Income Tax Regs., *supra* note 7.

[9]The regulations provide in relevant part as follows:

SECTION 1—APPLICABILITY AND DEFINITIONS

    1.2—*Definitions*

      \*        \*        \*        \*        \*        \*        \*

owed petitioner for gas supplied to its customers are "payable" until the customer is issued a "bill," and the petitioner may not proceed against a customer for failure to pay charges for gas consumed unless such charges have been rendered "due" by the issuance of a "bill" and the lapse of a period of time. Except to the extent that they show the customer's actual or estimated usage of gas through the last cycle meter reading date, the monthly statements petitioner sends its budget billing customers are not enforceable bills.

As defined in section 1.2(a) of the regulations of the Massachusetts Department of Public Utilities (DPU) (*supra* at note 9), a "bill" sets forth a customer's actual or estimated consumption of gas. Estimated bills are permitted, but only if the bill preceding the estimated bill was based on an actual meter

---

(a) "Bill", a written statement from a company to a customer setting forth the amount of gas * * * consumed or estimated to have been consumed for the billing period set forth in the company's tariff and the charges therefor.

> *       *       *       *       *       *       *

(g) "Receipt", in the case of a bill or notice required by these regulations, shall be presumed to be three days after the date of mailing, or if a bill or notice is delivered rather than mailed, on the date of delivery.

> *       *       *       *       *       *       *

SECTION 2—BILLING AND TERMINATION PROCEDURE FOR RESIDENTIAL CUS-
TOMERS
2.1—*Billing and Payment*
All bills shall be payable upon receipt. However, no bill shall be considered "due" under * * * these Regulations in less than 45 days from receipt or in less time than has elapsed between receipt of such bill and receipt of the most recent previous bill for the company's services, whichever period is greater.

> *       *       *       *       *       *       *

2.2—*Actual Meter Reading and Estimated Bills*
A company shall make an actual meter reading at least every other billing period. A company may estimate a customer's consumption of gas, electricity or water only if:
(a) The procedure used by the company for calculating estimated bills has been previously approved by the Department;
(b) The company clearly indicates that the bill is an estimate by use of the word "ESTIMATE" on the face of the bill, in close proximity to the amount thereof, and in a manner previously approved by the Department; and
(c) The company has not rendered an estimated bill to the customer for the billing period immediately preceding that for which the estimate is made.

> *       *       *       *       *       *       *

2.3—*Termination of Service*
* * * Service may be terminated only if:
(1) a bill is not paid within 45 days from receipt, or such longer periods as may be permitted by section 2.1; * * *

> *       *       *       *       *       *       *

Service shall not be terminated for any reason other than failure to pay a bill * * *

reading, as set forth in section 2.2(c) of the DPU regulations (*supra* at note 9). Budget billing amounts are based on an estimate of the customer's gas usage for an entire 10-month heating season. The monthly budget billing amount is merely the total of the customer's estimated heating season charges divided by 10, and it bears no relation to the customer's actual usage of gas during the month. Accordingly, the budget billing amounts shown on the customer's monthly billing statement cannot be considered "payable upon receipt" under section 2.1 of the DPU regulations, since the budget billing amounts are not "bills" as defined in the regulations.

Petitioner's budget billing program is voluntary, and customers may withdraw from the program at any time by not paying the budget billing amount. The only amounts petitioner's budget billing customers are legally obliged to pay petitioner are the amounts shown on the budget billing statement as due for actual gas usage, and their payment obligation is thus the same as petitioner's customers who elect not to participate in the budget billing program. Accordingly, the issuance of a budget billing statement does not provide a justification for requiring petitioner to accrue the budget billing amount as income, since the budget billing statement is merely advisory and does not give rise to an enforceable obligation for the customer to pay for anything more than gas used as of the last cycle meter reading date. See *Cox v. Commissioner*, 43 T.C. at 456–457.

In light of the Commissioner's ruling that the cycle meter reading method of accounting clearly reflects income from sales of gas to customers not participating in a budget billing program, and the Government's concession that such ruling is applicable to petitioner's customers not electing budget billing, and further considering our finding that petitioner's budget billing customers have the same payment obligations as its other residential customers, we find that petitioner's method of accounting clearly reflects income from sales of gas to its budget billing customers, with the exception stated above, at pages 419–420. Petitioner's method of accounting has been consistently applied with respect to all its customers for a number of years, and this consistency of application is entitled to consideration when the Government has accepted petitioner's accounting method as applied to a substantial portion of petitioner's residential customers. Cf. *Fort Howard Paper Co. v. Commis-*

*sioner,* 49 T.C. 275, 284–286 (1967). As long as the Commissioner continues to accept the cycle meter reading method as clearly reflecting income with respect to petitioner's customers not using the budget billing program, petitioner's method of accounting for revenues for sales of gas to budget billing customers must likewise be found to clearly reflect income, since petitioner's budget billing customers have precisely the same payment obligations as petitioner's other residential customers. Accordingly, since petitioner's method of accounting clearly reflects its income, it was an abuse of the Commissioner's discretion to require petitioner to adopt an alternative accounting method. See *Auburn Packing Co. v. Commissioner,* 60 T.C. at 798–800; *Garth v. Commissioner,* 56 T.C. 618, 623.

Moreover, as an additional basis for our finding that the Commissioner abused his discretion in requiring petitioner to adopt an alternative accounting method with respect to budget billing customers, we note that the Commissioner's authority under section 446(b) is limited to requiring the computation of petitioner's taxable income under a method of accounting which "does clearly reflect income." He may not require petitioner to adopt an accounting method which does not clearly reflect income. See *Harden v. Commissioner,* 223 F.2d 418, 421 (10th Cir. 1955).

Here, the Commissioner would require petitioner to adopt different methods of revenue recognition with respect to its budget billing and other residential customers, despite the fact that customers in both of these groups are obliged to pay only for gas used as of their respective cycle meter reading dates. Although there might well be a justification for a differing accounting treatment for sales of gas to petitioner's budget billing customers if the budget bills were legally enforceable, or if the budget bills are in fact paid prior to the close of the taxable year,[10] under the DPU regulations, all of petitioner's residential customers have precisely the same payment obligations. We therefore find that the Commissioner's proposed modification of petitioner's accounting method would not clearly reflect petitioner's income and in fact would be contrary to the Treasury regulations, which require that acceptable methods of

---

[10]See pp. 419–420 *supra.*

accounting treat like items of income consistently. A method of accounting will ordinarily be treated as clearly reflecting income if it "reflects the *consistent* application of generally accepted accounting principles in a particular trade or business" (sec. 1.446–1(a)(2), Income Tax Regs., *supra* note 6 (emphasis added)), and "No method of accounting will be regarded as clearly reflecting income unless *all items of gross profit* and deductions *are treated with consistency* from year to year." Sec. 1.446–1(c)(2)(ii), Income Tax Regs. (Emphasis added.) Under these regulations, substantially similar items of income must be accorded consistent accounting treatment both within the taxable year and from one year to the next, regardless of the type of accounting method used. See *Potter v. Commissioner*, 44 T.C. 159, 167–169 (1965); see also *Advertisers Exchange, Inc. v. Commissioner*, 25 T.C. 1086, 1092 (1956), affd. per curiam 240 F.2d 958 (2d Cir. 1957). Since the Commissioner has determined that the cycle meter reading method of accounting clearly reflects income as applied to petitioner's customers not electing to participate in the budget billing program, and we have found in the circumstances of this case that both petitioner's budget billing customers and petitioner's other residential customers have the same payment obligations, we find that the Commissioner abused his discretion in requiring petitioner to adopt an accounting method which accounts for revenues from sales of gas to budget billing and other customers on an inconsistent basis.

In order to reflect any adjustments required by the petitioner's concession referred to above at pages 419–420 and to reflect the settlement of other issues,

*Decision will be entered under Rule 155.*