689 F.2d 1
 82-2 USTC P 9582
 BAY STATE GAS COMPANY (Successor by consolidation to
Brockton Taunton Gas Company and the former Bay
State Gas Co., Previously named
Northampton Gas Light
Company), Petitioner-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 81-1764.
 United States Court of Appeals,
First Circuit.
 Argued April 8, 1982.
Decided Sept. 16, 1982.
 
 Daniel F. Ross, Atty. Tax Div., Dept. of Justice, with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Kenneth L. Greene, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for respondent-appellant.
 John C. Richardson, P. C., with whom Alison E. Clapp, and LeBoeuf, Lamb, Leiby & MacRae, New York City, were on brief for petitioner-appellee.
 Before COFFIN, Chief Judge, FAIRCHILD, Senior Circuit Judge,* and BREYER, Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 The Tax Court held that in light of the surrounding facts it was an abuse of discretion for the Commissioner to require petitioner gas utility, an accrual basis taxpayer, to accrue as income for a given year charges for gas consumed by its budget billing customers between their December meter reading or estimate dates and December 31, which had not actually been paid for prior to year-end. We affirm the Tax Court's determination.
 
 I. Factual Background[1] and Proceedings
 
 2
 Petitioner, a regulated public utility engaged in the distribution of gas, recognizes income from all its customers on the basis of the cycle meter reading method of accounting, a method widely used in the utility industry for financial, regulatory, and tax purposes. Under that method, each customer is assigned a day of the month, and petitioner's employees read the customer's meter every other month on the assigned day. During interim months, the customer's consumption of gas is estimated as of the same day, based upon prior readings, weather conditions, and other data. Pursuant to the cycle meter reading method of accounting, petitioner accrues charges for gas consumption[2] as income on the day the customer's meter is read or estimated.
 
 
 3
 Each month a bill is sent to all customers, usually within four days after their reading or estimate is made. In the case of regular customers, the bill states the charge for the gas actually used. The same is true of bills sent to customers enrolled in petitioner's budget billing program,[3] except that in addition their bills contain, during ten months of the year, what may be referred to as an equalized or budget figure. That figure is an amount derived by estimating in advance the cost of the customer's probable gas usage during the ten-month heating season (September through June) and then dividing that figure by ten to arrive at an equal monthly payment. (It is unlikely that the total September through December budget amount for any customer will be the same as the total of the charges in those months for gas actually used.)
 
 
 4
 Whereas a regular customer is expected to pay within a given period the amount billed for actual gas consumption, a budget billing customer may instead pay the equalized or budget amount. A budget billing customer can, however, withdraw from the budget program at any time, either by request or by simply not paying the budget amount. Petitioner may not require a budget billing customer to pay the budget amount instead of the amount due for actual usage, and may only proceed against the customer upon the customer's failure to pay for gas actually consumed. If a customer stays on the budget billing plan for the entire heating season, cost adjustments in the form of charges, credits, or refunds are made at the end of the season to reconcile amounts received with actual gas usage. The disputed charges, therefore, include only amounts in excess of charges for gas actually used prior to the meter reading date, payable by budget billing customers but not actually paid by them prior to December 31.
 
 
 5
 Under the cycle meter reading method of accounting, revenue attributable to gas delivered to and used by a customer in December subsequent to the December meter reading or estimate date and included in the charge, based on usage, on the January bill is not recognized until the following taxable year. The Commissioner has long held that this method clearly reflects income with respect to sales to regular customers. See Rev.Rul. 65-287, 1965-2 C.B. 150; Rev.Rul. 71-429, 1971-2 C.B. 217; Rev.Rul. 72-114, 1972-1 C.B. 124. The question is whether the same method may be used to report income derived from sales to budget billing customers.
 
 
 6
 The Commissioner held that it may not. He determined that as to budget customers, petitioner's method of accounting did not clearly reflect income, and therefore assessed a deficiency against petitioner for the 1971 and 1973 tax years. As described by the Tax Court, the Commissioner required the following modification of petitioner's revenue recognition practices:
 
 
 7
 "If aggregate heating-season budget billings prior to the closing of the taxable year exceed the monthly charges for a customer's actual usage of gas, then the reasonably estimated charges for gas used by the customer through the end of the taxable year must be accrued as income in that year to the extent that such charges do not exceed the aggregate budget billings. For example, suppose that one of petitioner's customers on the budget billing program has been billed for $400 (at the rate of $100 a month) during the first 4 months of the heating season (September through December) and has used only $390 in gas as of his cycle meter reading date of December 20. If reasonably estimated charges for the customer's usage of gas between December 20 and December 31 are $25, the Commissioner would require petitioner to accrue an additional $10 as income in that year ($400-$390) and to recognize the remaining $15 as of the January 20 cycle meter reading date in the following year. If the cost of the customer's estimated usage of gas through December 31 was only $5, the Commissioner would require that this sum be included in income, rather than the $10 difference between total budget billings and gas usage through the last cycle meter reading date."
 
 
 8
 (75 T.C. at 416-417).
 
 
 9
 The Tax Court held that, with one exception, the Commissioner had abused his discretion in requiring a change in petitioner's method of accounting for gas sold to budget billing customers. The exception-which in fact petitioner did not contest-was that the Commissioner could require included as income payments actually made by budget billing customers prior to year end for gas in fact used subsequent to the December meter reading or estimate date.[4]
 
 
 10
 The court's finding of abuse rested on two distinct, but interrelated, rationales. Namely, that the Commissioner's required modifications, in excess of the authority conferred by applicable statutes and regulations, (1) supplanted a method of accounting which already accurately reflected income[5] and (2) required inconsistent treatment of similar items of income.[6] Both rationales were premised on the court's determination that the Commissioner had previously authorized use of the cycle meter reading method of accounting as clearly reflecting income with respect to regular customers and on the court's inability to discern any meaningful distinction between the payment obligations of regular and budget billing customers. The court's finding on the latter point was based on the fact that budget billing customers could unilaterally withdraw from the budget billing program at any time and were only legally obliged to pay the amount shown on their monthly statements for actual gas usage. Explaining its first rationale, the court wrote:
 
 
 11
 "(T)he issuance of a budget billing statement does not provide a justification for requiring petitioner to accrue the budget billing amount as income, since the budget billing statement is merely advisory and does not give rise to an enforceable obligation for the customer to pay for anything more than gas used as of the last cycle meter reading date....
 
 
 12
 "... As long as the Commissioner continues to accept the cycle meter reading method as clearly reflecting income with respect to petitioner's customers not using the budget billing program petitioner's methods of accounting for revenues for sales of gas to budget billing customers must likewise be found to clearly reflect income, since petitioner's budget billing customers have precisely the same payment obligations as petitioner's other residential customers. Accordingly, since petitioner's method of accounting clearly reflects its income, it was an abuse of the Commissioner's discretion to require petitioner to adopt an alternative accounting method."
 
 
 13
 75 T.C. at 422-423.
 
 
 14
 Summarizing its second rationale, the court stated:
 
 
 15
 "Since the Commissioner has determined that the cycle meter reading method of accounting clearly reflects income as applied to petitioner's customers not electing to participate in the budget billing program, and we have found in the circumstances of this case that both petitioner's budget billing customers and petitioner's other residential customers have the same payment obligations, we find that the Commissioner abused its discretion in requiring petitioner to adopt an accounting method which accounts for revenues from sales of gas to budget billing and other customers on an inconsistent basis."
 
 
 16
 75 T.C. at 424.
 
 
 17
 Subsequently, an appeal was taken to this court by the Government.
 
 II. The Merits
 
 18
 We note at the outset of our consideration of the merits that the Commissioner had broad discretion in determining whether a given method of accounting clearly reflects income. See, e.g., Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532, 99 S.Ct. 773, 780, 58 L.Ed.2d 785 (1979). The central question on appeal is whether the Tax Court erred in finding that the Commissioner had abused that broad discretion by relieving petitioner from the strict rules of accrual accounting with regard to its regular customers but not with regard to budget billing customers.
 
 
 19
 The Government acknowledges on appeal that "like the regular customers, budget billing customers are legally obligated to pay only for gas actually consumed." Brief for Appellant, p. 6; see also id. at pp. 4, 17 n.8. It argues, however, that the Tax Court's holding, which was based on a finding that there is no meaningful distinction between the legally enforceable payment obligations of the two groups of customers, is in error, because "the accrual of income turns (not) upon the legal rights of the parties (but) rather ... upon their agreement as to payment." Id. at 8 (brackets added). The Government's brief states:
 
 
 20
 "In fact, an enforceable right to receive an amount is not necessary to accrual of that amount. An amount is accruable when taxpayer has a fixed right to receive it even if that right is unenforceable. Precisely when taxpayer has such a right is determined on the basis of the arrangement agreed upon between the parties.
 
 
 21
 "The agreed upon method of payment with the regular customers, where the meter reading or estimate and billings are on the same cycle and are separated only by the time necessary to administratively process and transmit bills, is a method in which taxpayer receives payment based on actual consumption. The agreed upon method of payment with budget billing customers, however, is completely different. The budget billing customers agree to pay a flat monthly fee, irrespective of the amount of gas consumed. Taxpayer and the budget billing customers have, in effect, entered into a contract, albeit an unenforceable contract, for the entire heating season rather than a contract to pay monthly for gas as consumed. The fact that taxpayer or the customer may call for an adjustment of the budget billing amount or may cancel the budget billing agreement prior to the end of the contract heating season does not obviate the fact that prior to such cancellation or adjustment the budget billing arrangement was the agreed basis of payment for goods delivered or to be delivered between the parties and therefore the proper basis for accrual.
 
 
 22
 "Thus, the Tax Court's conclusion that there is no meaningful distinction between taxpayer's two groups of customers is without basis.... Accordingly, the court's holding that taxpayer's method of accounting with regard to the budget billing customers clearly reflected income is incorrect. Similarly, the court's finding that ... (the Commissioner's ruling) requires inconsistent treatment of similar items of income is erroneous."
 
 
 23
 Id. at pp. 8-10 (brackets substituted).
 
 
 24
 In support of its position the Government cites several cases, many purporting to hold that an enforceable right to payment is not a precondition to accrual of income.
 
 
 25
 We are not persuaded by the Government's reasoning, and indeed think that much of it leads in the wrong direction. In the main, the Government's argument is directed toward showing that under ordinary accounting principles the sales of gas to petitioner's budget billing customers between their December meter reading or estimate dates and the end of the year should result in income accrued within that calendar year. This point has never been in dispute. The Tax Court correctly recognized, implicitly if not explicitly, that, under a strict accrual method, income for the calendar year would have resulted from late-December sales to both regular and budget billing customers.[7] The question the court faced was whether the Commissioner, having already permitted use for tax purposes of the widely-employed cycle meter reading method of accounting as clearly reflecting income from sales of gas to regular customers, could rationally distinguish budget billing customers and require petitioner to account for sales to them under a substantially different method. Put differently, the question was whether there was any basis for saying that normally-accruable late-December sales need not be accrued as to regular customers, but need be accrued as to budget billing customers.[8] The Tax Court did not find, as the Government seems to assert it did, that an enforceable right to payment is ordinarily a pre-condition to accrual. Thus, the cases cited by the Government to dispute this point are not relevant. Rather, the court simply considered the matter of legal enforceability as a possible ground for justifying the Commissioner's granting of a waiver from strict accrual principles as to regular customers, but not as to budget billing customers. We do not think that the court erred in taking this approach.
 
 
 26
 We agree with the Tax Court that there was no meaningful distinction between the two groups of customers. As to both groups, petitioner had issued monthly statements for December stating the cost of prior gas usage, had subsequently delivered gas until the end of the year, and had not been paid prior to year-end for the gas consumed subsequent to December meter reading or estimate dates. The only apparent difference between the two categories of customers was that December (as well as earlier) statements sent to budget billing customers contained an equalized or budget figure. The Government argues that this figure represented an agreement or understanding that the budget customers would pay the budget amount. Assuming arguendo that such an agreement existed, we find it difficult to attribute it any significance.
 
 
 27
 Firstly, it is important to remember that the exception contained in the Tax Court's ruling means that we are only concerned with those situations where the budget amount was not paid prior to the end of the calendar year. Thus if an "understanding" existed, it did not create a significant difference from sales to regular customers by reason of the fact that it resulted in prompt payment. Secondly, the Tax Court correctly found, as indeed the Government admits, that the budget figure, to the extent it exceeded the amount due for gas actually consumed, was legally unenforceable. A budget customer could ignore it and pay the actual usage amount. The fact that the "agreement" could be so easily disregarded suggests that it should be attributed little weight.[9] Thirdly, the purported agreement is not determinative of whether under strict accrual principles income from the late-December sales to budget customers should be accrued. The Commissioner did not rule that income had to be accrued to the full extent that aggregate budget billings exceeded aggregate gas usage as of the time of the budget customer's December statement.[10] Rather, he required accrual only to the extent that there was such an excess and gas had subsequently been delivered prior to January 1. Thus, the sales with which we are concerned have in common the fact that a delivery had been made. Delivery itself, as the Government admits,[11] is a sufficient basis to require accrual since it fixes the customer's obligation to pay and makes the amount due reasonably capable of determination.[12] That being so, it makes little difference that there may have been an agreement to pay the budget amount. Even if the agreement created an obligation to pay to the extent of subsequent pre-January deliveries, the obligation also existed by reason of the fact that the gas had been delivered, accepted, and consumed. In other words, it is not rational to distinguish sales to budget customers on the ground that accrual was required by reason of the agreement since accrual of sales to both groups of customers would ordinarily be required on another ground. The issuance of a budget bill adds nothing to the obligation to pay established by reason of acceptance and use of the gas delivered. Fourthly, there is no suggestion in the record that issuance of the budget statement made eventual payment for actual gas usage more likely. Finally, "(t)he record indicates that only about one-fifth of the budget billing customers in fact pay their December 'bills' during the current year." 75 T.C. at 420. The Government does not argue that this is a high enough percentage of early payments so that this characteristic itself could justify treating budget billing as a different type of transaction.
 
 
 28
 In sum, we fail to see any meaningful distinction between the late-December sales of gas to the two groups of customers. The Commissioner has presented no rational basis for distinguishing between the two groups. Since the Commissioner has determined that petitioner's method of accounting for charges for gas consumed by its regular customers from their December meter reading or estimate dates through the end of the year clearly reflects income from such customers, the Commissioner abused his discretion (under both rationales offered by the Tax Court) by requiring another method of accounting for such charges to budget billing customers.
 
 
 29
 We note that the Government argues that the Tax Court misinterpreted various state regulations. We find it unnecessary to explore this issue. The court's discussion of state regulations occurred only in connection with its finding that budget billing customers are legally obliged to pay only for gas usage. The Government concedes the correctness of that point, see pp. 5-6, supra. Consequently, any error in the court's reasoning does not affect the merits.
 
 
 30
 Accordingly, the judgment of the Tax Court is AFFIRMED.
 
 
 
 *
 Honorable Thomas E. Fairchild of the Seventh Circuit, sitting by designation
 
 
 [1]
 The relevant background is more fully set forth in the opinion of the Tax Court, Bay State Gas Co. v. Commissioner, 75 T.C. 410 (1980). We have relied significantly on the Tax Court's "Findings of Fact," id. at 411-415, in summarizing herein the posture of the case
 
 
 [2]
 It is not disputed that for present purposes delivery and consumption of gas may be treated as virtually simultaneous
 
 
 [3]
 Approximately 30 to 40 percent of petitioner's residential customers participate in the budget billing program
 
 
 [4]
 In illustrating this exception, the court wrote:
 "(I)f a (budget billing) customer actually pays petitioner $400 prior to the end of the taxable year, and has used only $320 worth of gas as of his December cycle meter reading date, and uses $50 worth of gas between the December cycle meter reading date and the end of the taxable year, then petitioner would be required to include $50 in income in the current taxable year. However, since the remaining $30 will be a payment for gas to be provided in the next taxable year, this amount would be an 'advance payment' as defined in sec. 1.451-5(a) (1)(i), Income Tax Regs., ..., and its recognition as income can be deferred until the next year when the gas is supplied pursuant to sec. 1.451-5(b), Income Tax Regs., ...."
 
 
 [75]
 T.C. at 420 n. 8 (emphasis in original; brackets added)
 
 
 [5]
 "Section 446(a), I.R.C. 1954, provides that 'Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.' Section 446(c) further provides that acceptable methods of accounting for computing taxable income include 'an accrual method' and 'any combination of * * * methods permitted under regulations prescribed by the Secretary.' However, pursuant to section 446(b), 'if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary * * *, does clearly reflect income.' "
 
 
 [75]
 T.C. at 417
 
 
 [6]
 "(T)he Commissioner's authority under section 446(b) is limited to requiring the computation of petitioner's taxable income under a method of accounting which 'does clearly reflect income.' He may not require petitioner to adopt an accounting method which does not clearly reflect income
 "... A method of accounting will ordinarily be treated as clearly reflecting income if it 'reflects the consistent application of generally accepted accounting principles in a particular trade or business' (sec. 1.446-1(a)(2), Income Tax Regs.) ..., and 'No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year.' Sec. 1.466-1(c)(2)(ii), Income Tax Regs.... Under these regulations, substantially similar items of income must be accorded consistent accounting treatment both within the taxable year and from one year to the next, regardless of the type of accounting method used. See Potter v. Commissioner, 44 T.C. 159, 167-169 (1965); see also Advertisers Exchange, Inc. v. Commissioner, 25 T.C. 1086, 1092 (1956), aff'd. per curiam 240 F.2d 958 (2d Cir. 1957)."
 
 
 [75]
 T.C. at 423-424 (emphasis in Tax Court opinion)
 
 
 [7]
 Although the passage from the Government's brief quoted earlier in the text suggests that late-December sales to regular customers (unlike similar sales to budget customers) are not accruable by reason of a special agreement with petitioner as to payment, the Government acknowledges that they are accruable by reason of fact that the gas in question has been delivered and consumed. Page 11 of the Government's brief states:
 "Under the normal rules of the accrual method of accounting, ... (petitioner) would have to accrue income from the gas consumed through the last day of its taxable year by both its regular and budget billing customers."
 (Footnote omitted; brackets substituted.)
 Inasmuch as the Commissioner's modifications of petitioner's accounting method required accrual of budget billing amounts in excess of actual usage prior to the meter reading date only to the extent that gas had been delivered and consumed prior to the year-end, there is no need to explore the question of whether accrual could be predicated on a purported payment agreement. The relevant sales were accruable by reason of delivery; they could not have been any more accruable than they already were even if the Government is correct that a real, but unenforceable, agreement to pay the budget amount existed.
 
 
 [8]
 We reject the Government's suggestion that the inconsistent treatment of the two groups can be justified on the ground that the Commissioner's decision to relieve utilities from strict accrual principles with respect to regular customers was merely a "matter of grace" and "not something to which this or other taxpayers had a right." Reply Brief for Appellant, p. 4. We find no clear indication that the Commissioner is authorized to act in such a manner or that he was in fact doing so at the time of the earlier decisions
 
 
 [9]
 The only apparent penalty for withdrawing from the budget program was that the customer could not rejoin the budget program during the remainder of the current heating season
 
 
 [10]
 The fact that he did not suggests to some extent that the asserted payment agreement with budget customers is not itself a factor sufficient to warrant accrual
 
 
 [11]
 Page 12 of the Government's main brief on appeal states:
 "Under the normal rules of the accrual method of accounting, taxpayer would have to accrue income from gas consumed through the last day of its taxable year by both its regular and budget billing customers.... Once the gas has been delivered, the taxpayer's right to payment for it is fixed and the amount due is certain."
 
 
 [12]
 "In broad outline, accrual is required when three conditions are met: the right or obligation is fixed, the amount is reasonably capable of determination, and there is no substantial doubt as to collection or payment."
 J. Chommie, The Law of Federal Income Taxation § 83 (2d ed. 1973). See also Sec. 1.446-1(c)(ii) ("Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy.")