ORANGE AND ROCKLAND UTILITIES, INC., ORANGE AND ROCKLAND UTILITIES, INC. AND SUBSIDIARIES; ROCKLAND ELECTRIC COMPANY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10715-82.    Filed February 18, 1986.

*John C. Richardson* and *Alison E. Clapp*, for the petitioners.

*David N. Brodsky*, for the respondent.

HAMBLEN, *Judge*: Respondent determined deficiencies with respect to the Federal income tax liability of petitioners as follows:

| Petitioner | Year | Deficiency |
|---|---|---|
| Orange & Rockland Utilities, Inc. (O & R) | 1976 | $4,239,516 |
| Rockland Electric Co. (Rockland) | 1976 | 2,813 |
| Orange & Rockland Utilities, Inc., and Subsidiaries (O & R group) | 1977 | 1,651,500 |

After concessions,[1] the issue presented for decision is whether petitioners may use the "cycle meter reading" method of accounting for Federal income tax purposes where such method does not conform to the method of accounting used by petitioners for financial statement and regulatory reporting purposes.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference.

O & R group is an affiliated group of corporations within the meaning of section 1504.[3] O & R, as parent of the O & R Group, filed a consolidated federal income tax return on behalf of the O & R group for the calendar yearend 1977. O & R filed a separate Federal income tax return for the calendar year 1976. Rockland is a member of the O & R group and was included in the 1977 O & R group consolidated Federal income tax return. Rockland filed a separate 1976 Federal income tax return.

---

[1]Respondent concedes by stipulation of fact that certain fuel adjustments were improperly included as unbilled revenue within the statutory notices of deficiency.

[2]Respondent's determination that petitioners must accrue unbilled revenue with respect to utility service furnished between the last cycle meter reading date and the calendar yearend in prior taxable years necessitated computational adjustments to the following tax attributes: (1) The net operating loss carryforward to the 1977 O & R group return; (2) the investment credit carryforward to the 1976 O & R return; and (3) the net operating loss carryforward to the 1976 Rockland return.

[3]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners are regulated public utilities. Petitioners have been engaged in the distribution of utility service for over 50 years and furnish utility service to approximately 275,000 customers. Petitioners maintained a principal place of business at Pearl River, New York. O & R furnished gas and electric service in southern New York State and was subject to regulation by the New York Public Service Commission and the Federal Power Commission. Rockland furnished electric service in northern New Jersey and was subject to regulation of the Board of Public Utility Commissioners of the State of New Jersey and the Federal Power Commission. Pike County Light & Power Co., an affiliated member of the O & R group included in the 1977 O & R group consolidated Federal income tax return, furnished gas and electric service in Pike County, Pennsylvania, and was subject to regulation by the Pennsylvania Public Utility Commission and the Federal Power Commission.

The applicable public utility commission regulations and rate tariffs did not permit petitioners, except in unusual credit situations, to bill customers more frequently than monthly or bimonthly depending upon the class of service. These regulations and tariffs provided for customer billing, except in unusual credit situations, only after a meter reading or an interim estimate. Petitioners could not bill customers prior to the next cycle meter reading date for utility service furnished between the last cycle meter reading date and the end of the calendar year unless new tariffs were submitted to and approved by the appropriate regulatory agencies.

Under the applicable public utility commission regulations and rate tariffs, petitioners were permitted to terminate service to a customer for nonpayment, except in unusual credit situations, only upon nonpayment of a bill, for a specified period and under specified circumstances.

The applicable public utility commission regulations and rate tariffs determined the allowable rates charged for utility service and varied depending upon usage, class of service, and demand.

In accordance with the applicable tariffs, petitioners billed customers monthly or bimonthly, depending on the class of service and related meter reading and billing cycle. As is

customary within the industry, petitioners did not read all customer meters on the last day of each month. Petitioners assigned to each customer a certain date of each month for meter reading purposes. Petitioners read the meters of residential gas heating customers on the assigned date on a bimonthly basis and estimated the meter reading for interim months. For residential electric customers other than heat and hot water customers, petitioners also read the customers' meters on the assigned date on a bimonthly basis and estimated the meter reading for interim months. However, for residential heat and hot water electric customers and for commercial and industrial electric customers, petitioners read the customers' meters on an assigned date every month. The assigned date on which a customer's meter was read or was estimated for interim months where applicable is referred to herein as the "cycle meter reading date."

Petitioners prepared bills according to the applicable tariff rate schedules approximately 2 to 5 days after each cycle meter reading date. Large power customers were billed in the same manner. However, petitioners attempted to coordinate the cycle meter reading date for such customers with the close of each month.

From their incorporation over 50 years ago through and including the taxable years here involved, petitioners have consistently for Federal income tax purposes accrued revenue from sales of gas and electricity as income on the basis of their meter reading and billing cycles. Under this method, petitioners accrued as income all amounts billable during the year based upon their meter reading and billing cycles. In each year, therefore, petitioners accrued the gross income billable for the gas or electricity used (or, as to interim months, where applicable, estimated to have been used) for all cycle meter reading dates falling within the year. Accordingly, the income accrued during the year included the revenue for gas or electricity furnished to a customer between the last cycle meter reading date of the prior year and the end of such prior year. Income accrued during a current taxable year did not include the revenue for gas or electricity furnished to a customer between the last cycle meter reading date of that year and the end of

that year. Such income is sometimes referred to within the industry as "unbilled revenue."

Petitioners deducted for Federal income tax purposes the cost of producing and delivering gas and electricity delivered after the last meter reading date in the year through the end of the year, but did not deduct the cost of meter reading and billing for such gas and electricity as these activities had not been performed by the end of the year.

In contrast with the method of accounting used for Federal income tax purposes, petitioners recorded estimated unbilled revenue at the end of each year for book and financial accounting purposes, a financial reporting practice used for years beginning after December 31, 1969. For all prior years, petitioners used the cycle meter reading method of accounting for both financial statement and tax purposes.

The unbilled revenue was included in income by petitioners in all its certified financial reports submitted to shareholders, creditors, and regulatory agencies. The amount of unbilled revenue so recorded as income for book and financial accounting purposes was not, however, included within the accounts receivable in the financial accounts of petitioners but was instead included in a separate category entitled "accrued utility revenue."

The amount of "accrued utility revenue" for financial reporting purposes as of December of each year in issue for electric customers was determined as follows: An actual meter reading is taken for each customer whose meter is read on December 31 in a given class of customers. Approximately one-thirtieth of petitioners' customers are on a December 31 meter reading cycle. For residential electric customers, actual usage of December 31 cycle customers for the period ending December 31 is then compared with actual usage of such customers for the immediately preceding meter reading period to develop a growth factor. Then, for residential electric customers, the actual daily usage to the last meter reading date is multiplied by the growth factor thus developed and, in turn, by the number of days of usage to be estimated as "accrued utility revenue" for each such customer whose meter is not read on December 31. For commercial and industrial customers, actual daily

usage to the last meter reading date is multiplied by the number of days of usage to be estimated as "accrued utility revenue." The sum of "accrued utility revenue" thus determined for all customers is the total "accrued utility revenue" at December 31 of each year. The procedure for computing "accrued utility revenue" for gas customers is similar but includes, in place of the growth factor, a weather factor. Also, there is a daily "base load" for certain gas customers, which is not adjusted by the weather factor.

Petitioners and their outside accountants have no records or other evidence indicating that any test checks were performed, either by petitioners or by petitioners' outside accountants, to verify the method of calculating unbilled revenue prior to the implementation of the method.

However, after implementation of the method of computing unbilled revenue, both petitioners and their outside accountants checked to insure that the method had been correctly applied and that the results of such application were mathematically correct. This was done by applying the method manually to randomly selected customers and comparing the results with the computer-generated amount of unbilled revenue for each customer. In addition, the billing program, particularly that part of the program relating to estimated bills, was checked by petitioners by comparing the actual amounts reflected by a meter reading for a group of customers comprising an entire meter reading cycle with amounts calculated under the estimated billing procedure for the same customers for the period covered by the meter reading. The results of petitioners' checks of the billing program have shown, generally, that the program generates estimated bills which are reasonably accurate (varying from 90 percent to 105 percent of actual). This test check, however, is not a confirmation of the accuracy of the method used to determine unbilled revenue but rather a method to determine the accuracy of estimated interim billings generated under the billing program.

Petitioners' outside accountants, in connection with their annual examination of petitioners' consolidated financial statements, performed certain test checks and applied certain auditing procedures to petitioners' method of com-

puting unbilled revenue. The test checks of unbilled revenue performed by petitioners' outside accountants indicated that the unbilled revenue calculation for 1976 was 93-percent accurate and such calculation for 1977 was 95-percent accurate.

Petitioners maintained workpapers as part of their permanent records that reconcile the method used in reporting for Federal income tax purposes the income from sales of gas and electricity with the method used for book and financial reporting purposes, and such a reconciliation is filed each year with respondent as part of petitioners' Federal income tax returns. Petitioners reported in Schedule M-1 to their Federal income tax returns for the taxable years here involved the difference between the method used in reporting for tax purposes the income from sales of gas and electricity and the method used for book and financial reporting purposes.

Petitioners' method of accounting for sales of gas and electricity for income tax purposes is a generally accepted practice employed in the utility industry for book and financial accounting purposes. The method of accounting for sales of gas and electricity which petitioners employed for book and financial accounting purposes also is a generally accepted accounting practice employed in the utility industry for book and financial accounting purposes. For book and financial accounting purposes, the majority of major public utilities did not during the years at issue and currently do not accrue as revenue gas or electricity delivered to the customer subsequent to the last cycle meter reading of the year. If petitioners had also employed the cycle meter reading method of accounting for book and financial accounting purposes, respondent would have accepted that method of accounting as clearly reflecting petitioners' income for Federal income tax purposes and would not have required petitioners to change their method of accounting to one that would require the accrual as income of gas and electricity delivered to customers subsequent to the last cycle meter reading of the year. See Rev. Rul. 72-114, 1972-1 C.B. 124.

## OPINION

We must determine (1) whether the cycle meter reading method of accounting which petitioner employed for tax reporting purposes clearly reflects income under section 446(b), and (2) if it does, whether such method is a permissible method under section 446(c).

This case is essentially identical to and indistinguishable from *Public Service Co. of New Hampshire v. Commissioner*, 78 T.C. 445 (1982), where we held that the cycle meter reading method of accounting clearly reflects income for Federal income tax purposes even though such method of income was not used for financial statement purposes and that respondent had abused his discretion under section 446(b) by requiring unbilled revenue to be included in income where the treatment of such revenue did not conform for income tax and financial reporting purposes. Respondent's position under section 446(b) in *Public Service Co. of New Hampshire* is a mirror reflection in this case. Our opinion in *Public Service Co. of New Hampshire* is dispositive of respondent's assertions that the cycle meter reading method of accounting fails to clearly reflect income within section 446(b), unless there is conformity between tax and financial reporting, and we must reject respondent's efforts to subsume us again in the conformity and clear reflection of income issue under section 446(b).

As in *Public Service Co. of New Hampshire*, respondent concedes that the cycle meter reading method of accounting clearly reflects income where such method is in conformity with the method of accounting used for financial statement purposes. Nevertheless, where such conformity is absent, respondent asserts that the cycle meter reading method fails to clearly reflect income. See Rev. Rul. 72-114, *supra*. Respondent, therefore, premises his argument upon the existence vel non of conformity because, in his view, conformity is required to insure the clear reflection of income. However, respondent has not shown us a common denominator that predicates a correlation between conformity of income tax and financial accounting reporting practice and the clear reflection of income sufficient to condition the use of the cycle meter reading method of

accounting upon such conformity. *Public Service Co. of New Hampshire v. Commissioner, supra;* cf. *Bay State Gas Co. v. Commissioner,* 689 F.2d 1, 6 (1st Cir. 1982), affg. 75 T.C. 410, 420 (1980); see generally Dubroff, Cahill & Norris, "Tax Accounting: The Relationship of Clear Reflection of Income to Generally Accepted Accounting Principles," 47 Albany L. Rev. 354 (1983). We perceive no meaningful distinction between petitioners' reporting practice and that of similarly situated public utilities which do conform tax and financial reporting practices as directed by respondent within Rev. Rul. 72-114, *supra.*

We conclude again and reiterate that petitioners' use of the cycle meter reading method of accounting clearly reflects income and that respondent abused his discretion by requiring income recognition of unbilled revenue merely due to the absence of conformity of such treatment between Federal income tax purposes and financial statement purposes. See *Public Service Co. of New Hampshire v. Commissioner, supra.*

However, in *Public Service Co. of New Hampshire* we declined to consider respondent's argument that the cycle meter reading method of accounting is a hybrid method of accounting not specifically permitted under section 446(c) because respondent's notice of deficiency failed to specify such a contention and the notice of deficiency was not supplemented by respondent's answer. *Public Service Co. of New Hampshire v. Commissioner, supra* at 454. Nevertheless, as the requirement that a taxpayer's method of accounting clearly reflects income under section 446(b) is in addition to the requirements of sections 446(a)[4] and 446(c), respondent was permitted to amend his answer by order of this Court subsequent to our decision in *Public Service Co. of New Hampshire.* In the amendment to answer, respondent posits that *Public Service Co. of New Hampshire* is not controlling because respondent's central legal position under section 446(c), that the cycle meter reading method of accounting is not a permissible method of accounting for income tax purposes where such method does not conform

---

[4]As in *Public Service Co. of New Hampshire v. Commissioner,* 78 T.C. 445 (1982), respondent does not argue that sec. 446(a) denies petitioners the opportunity to use the cycle meter reading method of accounting to compute taxable income.

to the method used for financial reporting purposes, was not addressed by the Court. Respondent bears the burden of proof as to the matters pertaining to section 446(c) and the Court so noted in its order granting respondent's motion to amend his answer herein. Rule 142(a). In addressing respondent's section 446(c) assertions within the amendment to his answer, we discern the thrust of respondent's arguments to be as follows:

(1) Petitioner's unbilled revenue is currently accruable under the all events test within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs.

(2) Because petitioners do not accrue unbilled revenue for tax purposes, the cycle meter reading method is not a specifically permitted method of accounting described in the Internal Revenue Code and regulations thereunder.

(3) Respondent may authorize the use of a method of accounting not otherwise described in the Internal Revenue Code and regulations thereunder if, in the opinion of the Commissioner, such method clearly reflects income. Sec. 1.446-1(c)(1)(ii), Income Tax Regs.

(4) The imposition of a condition of conformity between tax and financial accounting is a proper exercise of respondent's broad discretion within section 1.446-1(c)(2)(ii), Income Tax Regs., and is necessary to insure that the cycle meter reading method of accounting clearly reflects income.

(5) Since petitioners use a method which accrues unbilled revenue for financial statement purposes and use the cycle meter reading method for tax purposes, petitioners' method of accounting fails to clearly reflect income.

Respondent asserts that section 446(c) and section 1.446-1(c)(2)(ii), Income Tax Regs., provide him wide latitude to establish conditions to insure that a method of accounting not specifically permitted under section 446(c) clearly reflects income. Respondent also asserts that the cycle meter reading method of accounting is not a specifically permitted method under section 446(c), and that the conformity requirement of Rev. Rul. 72-114, *supra* is a proper exercise of authority under section 1.446-1(c)(2)(ii), Income Tax Regs. Although we did not reach the "permissible method" issue under section 446(c) in *Public Service Co. of New Hampshire*, our opinion there is a foundation for and foreshadows

the determination we make here. In *Public Service Co. of New Hampshire* we indicated that:

Whether petitioner's unbilled December revenues are properly accruable in December within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs., is the linchpin of respondent's argument under section 446(c), because if they are not properly accruable, then petitioner's meter reading and billing cycle method of accounting is an accrual method within the meaning of respondent's regulations, and as such, it is a "permissible method" pursuant to section 446(c)(2). That is, respondent's arguments under section 446(c)(4) are premised on our finding that petitioner's method of accounting is a "hybrid" * * * rather than an accrual method, * * * [*Public Service Co. of New Hampshire v. Commissioner, supra* at 453-454; citations omitted.]

We also noted that the billing requirements of the applicable public utility commission regulations and rate tariffs "may well be critical with respect to the issue of accruability." *Public Service Co. of New Hampshire v. Commissioner, supra* at 454-455.

The method of accounting used by a taxpayer to determine when income is recognized will be accepted as a permitted method of accounting if such method comports with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the regulations. Sec. 1.446-1(c)(1)(ii), Income Tax Regs.

The cycle meter reading method of accounting is in accord with generally accepted accounting principles and is predominate in use within the utilities industry. See *Public Service Co. of New Hampshire v. Commissioner, supra* at 456; *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 15 (1974); *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521, 556 (1979), affd. 633 F.2d 512 (7th Cir. 1980). It has long been considered a generally accepted accounting principle for utilities to accrue revenues based on either cycle meter readings or bills rendered basis with no accounting recognition of unbilled revenue, and certified public accountants issue unqualified financial statements prepared so as to accrue revenue when meters are read or the consumer is billed. Financial statements which reflect unbilled revenue also are prepared in accordance with generally accepted accounting principles. Petitioners have consistently used the cycle meter reading method of ac-

counting for tax purposes from incorporation over 50 years ago through the tax years in issue and for financial statement purposes from incorporation through the year ended December 31, 1969.

The issue as to whether the cycle meter reading method of accounting is a permissible method of accounting must focus upon the determination as to whether such method is consistent with the regulations. Section 1.446(c)(1)(ii), Income Tax Regs., states that "Generally under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. "Accordingly, the cycle meter reading method of accounting which operates to defer unbilled December revenue, will be a permissible method of accrual accounting within section 446(c)(2) if all events which fix petitioners' right to receive such unbilled revenue have not occurred as of December 31 of each year in issue or the amount thereof cannot be determined with reasonable accuracy. Sec. 1.446-1(c)(1)(ii), Income Tax Regs. Respondent asserts that unbilled December revenue is properly accruable as of December 31 of each year in issue and that the cycle meter reading method of accounting is not specifically authorized by the Internal Revenue Code on the regulations thereunder. Accordingly, respondent posits that the cycle meter reading method of accounting is a variation or combination of an accrual method of accounting within the meaning of section 446(c)(4) and that respondent's imposition of the conformity requirement in order to insure the clear reflection of income is a proper exercise of respondent's authority under section 1.446-1(c)(2)(ii), Income Tax Regs.

Respondent asserts that the delivery of utility services after the last cycle meter reading date in December fixed petitioners' right to receive unbilled revenue accrued for financial statement purposes as of December 31 of each year in issue, and respondent cites *Bay State Gas Co. v. Commissioner, supra,* secs. 1.446-1(c)(1)(ii) and 1.471-1, Income Tax Regs., and *City Gas Co. of Florida v. Commissioner,* T.C. Memo. 1984-44, to support his contention.

Respondent relies on the opinion of the Court of Appeals for the First Circuit in *Bay State* for the proposition that delivery of utility service after the last cycle meter reading date in December was sufficient under the strict rules of accrual accounting to require income recognition of unbilled revenue because delivery fixed the customer's obligation to pay for utility services and the amount thereof was reasonably capable of determination. The issue before us here, however, whether under the cycle meter reading method, unbilled December revenue is properly accruable as of December 31 of each year within the meaning of section 1.446-(c)(1)(ii), Income Tax Regs., was not decided in *Bay State* by either the Court of Appeals for the First Circuit, *Bay State Gas Co. v. Commissioner*, 689 F.2d at 5, or by this Court. The Court of Appeals for the First Circuit stated in *Bay State* that the "Tax Court correctly recognized, implicitly if not explicitly, that, under a strict accrual method, income for the calendar year would have resulted from late December sales to both regular and budget billing customers." *Bay State Gas Co. v. Commissioner*, 689 F.2d at 5.[5] However, neither the opinion of that court nor our opinion in *Bay State* reached the issue as to whether the company's unbilled revenues were properly accruable in December within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs. Cf. *Public Service Co. of New Hampshire v. Commissioner, supra* at 454. The issue for decision in *Bay State* was whether respondent, having permitted the company to use the cycle meter reading method of accounting for tax purposes as provided in Rev. Rul. 72-114, *supra*, could require the company to accrue revenue generated by the delivery of gas to the company's "budget billing" customers.[6] Respondent had determined that, as to budget billed customers, the cycle meter reading method of accounting did not clearly reflect income to the extent an

[5] As the fundamental issue of accruability under the all events test concerning the circumstances presented here was not before the Court of Appeals for the First Circuit in *Bay State Gas Co. v. Commissioner*, 689 F.2d 1 (1st Cir. 1982), affg. 75 T.C. 410 (1980), respondent's reliance upon that court's language relating to accruability under the all events test is misplaced as *Bay State* should be read only in the context of the issue there decided.

[6] In *Bay State* the gas company offered residential gas customers a budget billing plan whereby gas costs for the entire heating season were estimated in advance such that the customer was billed a pro rata portion of the entire heating season estimate each month, with an adjustment for actual usage at the end of the heating season.

excess budget bill was estimated as of the assigned cycle meter reading date where gas had subsequently been delivered, but payment had not been received prior to the end of the taxable year.[7]

In *Bay State*, we stated that "Except to the extent that they [the company] show the customer's actual or estimated usage of gas through the last cycle meter reading date, the monthly statements * * * [the company] * * * sends its budget billing customers are not enforceable bills." *Bay State Gas Co. v. Commissioner*, 75 T.C. at 421. We also stated that differing accounting treatment might be justified if the budget bills were legally enforceable or if the budget bills were in fact paid prior to the close of the taxable year, although, under the applicable utility commission regulations, all customers had precisely the same payment obligations. *Bay State Gas Co. v. Commissioner*, 75 T.C. at 423. Therefore, in *Bay State*, we held that the company's method of accounting as to budget billing customers clearly reflected income because we found no meaningful distinction in the payment obligations of budget billing customers as compared to the company's regular billing customers. In *Bay State*, we focused on the occurrence of the cycle meter reading date because such date fixed the company's right to receive income as provided within the applicable public utility commission regulations. *Bay State Gas Co. v. Commissioner*, 75 T.C. at 420-421.

We believe that our analysis in *Bay State* is equally applicable to the present case. Under the pertinent public utility commission regulations and rate tariffs, petitioners were not entitled to bill unbilled revenue or pursue an enforceable right to such revenue until after the occurrence of the cycle meter reading date in the following January. Consequently, all events which fix petitioners' right to receive unbilled December revenue have not occurred as of December 31 of each year in issue. The applicable public utility commission regulations and rate tariffs are such that

---

[7]In *Bay State*, the company conceded that, to the extent that a budget billing customer has in fact paid the December budget bill during that month, it must accrue as income an amount to the extent that such customer has in fact paid for gas consumed during the taxable year. *Bay State Gas Co. v. Commissioner*, 689 F.2d at 6; 75 T.C. at 420. See also *Schlude v. Commissioner*, 372 U.S. 128 (1963); *American Automobile Association v. United States*, 367 U.S. 687 (1961).

the critical event necessary to fix petitioners' right to receive unbilled December revenue is the occurrence of the respective cycle meter reading date which does not take place until the following January. In order to bill at other intervals, petitioners would have to obtain approval from the appropriate regulatory agency. Furthermore, termination of service was subject to the terms and conditions specified within the applicable public utility commission regulations and rate tariffs. We conclude, therefore, that for tax purposes, the cycle meter reading date in the following January, which fixed the billing requirements and terms of regulated performance, is the critical event necessary to fix petitioners' right to receive income generated by service provided between the last cycle meter reading date in December and the end of the taxable year. We note that a "strict method" of accrual accounting used by petitioners for financial statement purposes does recognize unbilled December revenue and that such method is in accord with generally accepted accounting principles. However, generally accepted accounting principles are not dispositive of characterization for tax purposes. *Thor Power Tool v. Commissioner*, 439 U.S. 522 (1979). Furthermore, the cycle meter reading method of accounting also is an accrual method which is in accord with generally accepted accounting principles and is in predominate usage within the utility industry. We find that, for income tax purposes, the cycle meter reading date in the following January is the critical event necessary to properly accrue unbilled December revenue within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs. The effect of the regulatory and tariff requirements preclude any other holding. See *Commissioner v. Idaho Power Co.*, *supra* at 15.

Respondent relies upon *City Gas Co. of Florida v. Commissioner*, *supra*, for the assertion that petitioners are manufacturing companies which must accrue income upon delivery and that the act of billing is not a factor within the all events test. See sec. 1.446-1(c)(1)(ii), Income Tax Regs. *City Gas* is distinguishable as that case concerned the appropriate characterization and time of recognition concerning certain advance deposits received by a gas company. Whether unbilled revenue is properly accruable within

the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs., was not at issue in *City Gas*. Respondent's reliance upon *City Gas* for the assertion that petitioners are manufacturers which must accrue income upon delivery, whether or not billed, is misplaced as that opinion does not characterize petitioners as manufacturers for purposes of the all events test within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs.

We recognize that under the regulations manufacturers accrue income as of delivery, whether or not billed. Sec. 1.446-1(c)(1)(ii), Income Tax Regs.; *Bentley Laboratories, Inc. v. Commissioner*, 77 T.C. 152, 165 (1981). We, however, are of the view that petitioners, as regulated public utility companies, provide services as so classified by the accounting profession in Accounting Research Study No. 7.[8] Furthermore, we distinguish the event which renders services as billable from the mere ministerial act of billing. We note that underAccounting Principles Board, Statement No. 4, revenue from services rendered is recognized when services have been performed and are billable.[9] The billing and termination of service regulations and rate tariffs of the applicable public utility commissions are such that the occurrence of the respective cycle meter reading date in January is the critical event necessary to fix petitioners' right to unbilled December revenue and renders such services billable. Billing is purely a ministerial act which has no effect on petitioners' revenue recognition treatment. Petitioners accrue revenue as of the cycle meter reading date, not the billing date.

---

[8]Accounting Research Study No. 7 provides:

\*       \*       \*       \*       \*       \*       \*

Recognition at time of sale.
In the case of businesses selling services, such as public utilities, the act or process of furnishing service, together with invoicing usually provides the occasion for recognition of revenue. \* \* \*

[American Institute of Certified Public Accountants, Accounting Research Study No. 7, P. Grady, Inventory of Generally Accepted Accounting Principles for Business Enterprises 76-77 (1965).]

[9]Accounting Principles Board, Statement No. 4 provides in relevant part:

"Revenue from sales of products is recognized under this principle at the date of sale, usually interpreted to mean the date of delivery to customers. Revenue from services rendered is recognized under this principle when services have been performed and are billable. \* \* \*"

[AICPA, A.P.B. Accounting Principles Statement No. 4, at 9086 (1970).]

In *Decision, Inc. v. Commissioner*, 47 T.C. 58, 63 (1966), we held that all events which fixed the rights of an accrual basis advertising concern had not occurred as of the end of the taxable year where the terms of the contractual arrangement provided that the contract was not billable and payment not due until the following taxable year. Furthermore, in *Cox v. Commissioner*, 43 T.C. 448, 457 (1965), we held, in part, that unbilled fees relating to investment management services were not accruable where the unbilled fees were not payable under the terms of the contract until billed and supported by services rendered. Our opinions in *Decision, Inc.* and *Cox* are applicable here where the pertinent public utility commission regulations and rate tariffs provide that unbilled December revenue is not billable and termination of regulated performance not permissible until after the occurrence of the respective cycle meter reading date in January.

We hold that all events which fixed petitioners' right to receive unbilled December revenue had not occurred as of December 31 of each year in issue. Consequently, the cycle meter reading method of accounting is a permissible method of accrual accounting within the meaning of section 1.446-1(c)(1)(ii), Income Tax Regs., and respondent abused his discretion by requiring petitioners to adopt a method of accounting other than the cycle meter reading method of accounting for tax purposes. Since we have determined that the cycle meter reading method is a specifically permitted accrual method of accounting within section 446(c)(2), respondent's imposition of a condition of conformity was an abuse of discretion as respondent's discretion within section 1.446-l(c)(2)(ii), Income Tax Regs., is relevant only to determine whether a method of accounting not specifically permitted clearly reflects income. *Pierce Ditching Co. v. Commissioner*, 73 T.C. 301, 305 (1979).[10] We have reached

---

[10]In *Pierce Ditching Co. v. Commissioner*, 73 T.C. 301 (1979), a cash basis construction company had historically accrued as a deduction bonuses for its employees determined at yearend and paid within 2½ months after the close of the taxable year. Respondent had audited the company for several years without adjustment as to this "hybrid" method of accounting. We determined there that a hybrid method of accounting was employed and that respondent's prior examination without adjustment was not a "positive act" sufficient for this Court to find that respondent had approved such hybrid method by exercising his authority granted under sec. 1.446-1(c)(2)(ii), Income Tax Regs. We have determined here that the cycle meter reading method of accounting is an accrual method specifically permitted under sec. 446(c)(2) and that such method of accounting clearly reflects income under sec. 446(b). No

our determination irrespective of the burden of proof which was placed on respondent by Order of this Court.[11]

We also reach our determination notwithstanding the fact that all events which fix petitioners' liability for expenses related to unbilled December revenue have occurred as of December 31 of each year in issue. As in *Public Service Co. of New Hampshire v. Commissioner*, 78 T.C. 445 (1982), we recognize that the cycle meter reading method of accounting operates to mismatch revenue recognition and related expenses (*Public Service Co. of New Hampshire v. Commissioner, supra* at 457), and that the matching of revenues and related expenses is a desirable objective. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 11 (1974); *American Automobile Association v. United States*, 367 U.S. 687, 692 (1961). However, it is well established that the matching of revenue recognition and related expenses is not absolutely essential. *Public Service Co. of New Hampshire v. Commissioner, supra* at 457; e.g., *Schlude v. Commissioner*, 372 U.S. 128 (1963). The result here is one of a timing difference which operates to defer income recognition of unbilled December revenue, but it is quite clear from the context of the applicable public utility commission regulations and rate tariffs that petitioners have not deliberately manipulated its income recognition procedure so as to prevent income from accruing that petitioners otherwise would have become entitled to receive as of December 31 of each year in issue. We are of the view that in the context of the public utility industry, the matching of revenue and related expenses is an inconsequential factor to our determination that the cycle meter reading method of accounting clearly reflects income and is a permissible method of accrual accounting.

---

"hybrid" method is involved here, respondent's assertion to the contrary notwithstanding. Therefore, respondent's reliance on *Pierce Ditching Co.*, and sec. 1.446-1(c)(2)(ii), Income Tax Regs., is misplaced, and the Court's holding there is irrelevant to our determination here.

[11]We note, however, that respondent has not carried his burden of proof here. Respondent also asserts that unbilled December revenue may be determined with resonable accuracy within the meaning of sec. 1.446-(c)(1)(ii), Income Tax Regs., as evidenced by certain test checks performed by petitioners' outside accountants with respect to unbilled revenue amounts as of Dec. 31, 1976 and 1977. We have determined that the applicable public utility commission regulations and rate tariffs are such that the occurrence of the respective cycle meter reading date aftert the close of the taxable year is critical to the proper accrual of unbilled December revenue. Therefore, we find it unnecessary to address respondent's assertion as to the reasonabnle accuracy of petitioners' calculation of unbilled revenue estimated for financial statement purposes.

We conclude that this so-called misnomity, if any, is incidental and not inconsistent.

In view of the applicable public utility commission regulations and rate tariffs, we determine that petitioners' method of accounting for tax purposes clearly reflects income under section 446(b) and that petitioners' method of accounting for tax purposes is a permissible method of accrual accounting within section 446(c)(2). Based on the foregoing,

*Decision will be entered under Rule 155.*