CITY INVESTING COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
City Investing Co. v. Commissioner
Docket No. 17739-82.
United States Tax Court
T.C. Memo 1987-36; 1987 Tax Ct. Memo LEXIS 36; 52 T.C.M. (CCH) 1422; T.C.M. (RIA) 87036; January 15, 1987. John S. Breckinridge, Jr. and F. Brook Voght, for the petitioner. David N. Brodsky and Robert J. Foley, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, *39 Judge: Respondent determined deficiencies in petitioner's Federal income tax for taxable years 1968, 1969 and 1970 as follows: Year
Deficiency
1968
$208,673
1969
19,789,652
1970
1,406,012
After concessions, the issue presented is whether unpaid commissions to insurance sales agents on deferred premium installment payments are deductible in the year the policy is issued pursuant to section 832(b)(6). [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference. Petitioner, the common parent of an affiliated group of corporations including Home Insurance Company (Home) and the Home Indemnity Company (Indemnity), timely filed 1968, 1969 and 1970 Federal income tax returns with the Internal Revenue Service at New York. Home and Indemnity [2] were both incorporated under the laws of the State of New York and commenced insurance business in 1853 and 1930, respectively. New York was petitioner's principal *40 place of business at the time the petition herein was filed. Home was nationally engaged in the property and casualty insurance business. [3] As required by the states in which it was licensed, Home annually filed a statement of financial condition (annual statement) on forms approved by the National Association of Insurance Commissioners (NAIC). [4] Home completed the annual statements in accordance with the instructions issued by the NAIC, which required the use of the "accrual," i.e., "earned and incurred basis" as the method of accounting (NAIC statutory method). [5] Home also followed the NAIC statutory method of accounting in computing its separate taxable income included in petitioner's consolidated tax returns. *41 During the years at issue, Home sold insurance policies covering varying lengths of time. The policies were issued on preprinted forms that Home provided its agents. With respect to policies with terms of three years or less, Home sometimes allowed the insured the option of paying all the premiums at the inception date of the policy or paying in installments. [6] Home could complete the policy form such that the insured: Was required to pay the total premium due on the inception date; was required to pay in installments; or was given an option to pay the total premium on the inception date of the policy or in installments. Given the option, some insureds chose to pay the premium in a single payment and others elected installment payments. During the years at issue, Home sold policies mainly through the American Agency System, representing about 7,500 licensed independent insurance agents. The agents received commissions (specified percentages of premiums written) on policies they issued on Home's behalf as compensation. [7] All premium payments by the insured were to be made to the *42 agent, not Home, regardless of the method of payment. [8] After the agent received the premium from the insured, commissions were deducted and the balance remitted to Home. In the event an insurance policy was canceled, [9] Home returned to the agent any portion of the premium it received that was unearned on the cancellation date, less the agent's commission applicable to that portion of the premium. The agent was required to remit to the insured the full amount of the premium unearned on the cancellation date. The agent was not entitled to a commission pertaining to any portion of the premiums attributable to the period following the date of cancellation. *43 Regardless of the method of payment the insured selected, Home's accounting entries never varied: on the date the policy was issued, Home recorded in the premiums-written account the total amount of premiums due and in the expenses-incurred account the total amount of commissions to be earned. [10] Thus, Home's premiums-written account consisted of the total premiums shown in each insurance policy issued during the taxable year, even if the total premium was not due in such year. [11] Federal taxable income, however, is based on premiums earned rather than premiums written. Thus, deferred premium installments were not included in income for Federal income tax purposes. Additionally, and consistent with the NAIC annual statement instructions, all commissions applicable to premiums recorded in the annual statement as premiums written were recorded as paid expenses. [12] The Federal tax effect of the NAIC sanctioned accounting procedures, therefore, would be to allow current deduction for expenses associated with deferred premiums which are not taken into income until earned. This method of accounting for premiums written was adopted by Home prior to 1951 and was commonly used in the *44 property and casualty industry for completion of the annual statement. Also consistent with the NAIC statutory method of accounting, Home recorded premiums written but uncollected at the taxable year end, including deferred premium installments less the commissions applicable thereto, in an asset account *45 in the annual statement (agents' balances and uncollected premiums). The commissions applicable to deferred premium installments for the taxable years in issue are as follows: Taxable Year
Home
Indemnity
1968
$35,091,343.08
$3,899,038.12
1969
37,402,575.33
4,155,841.70
1970
35,623,957.85
3,958,217.54
OPINION We are asked to decide whether petitioner may currently deduct unpaid commission expenses attributable to premium installments not yet due. Property and casualty insurers, such as petitioner, are taxed under section 831 et seq. These provisions are detailed, and codify some tax principles based upon established practices in the property and casualty insurance industry. [13] These provisions were specially enacted for the insurance industry and include some tax accounting principles not permitted in computing the tax liability of other businesses. [14] See Bituminous Casualty Corp. v. Commissioner,57 T.C. 58, 80 (1971). *46 Section 831 contains the general rule that corporate tax rates as set forth in section 11 are imposed on certain insurance companies such as Home. Section 832(a) defines taxable income for such companies, and section 832(b), as pertinent herein, defines gross income, underwriting income, premiums earned and expenses incurred. Section 832(c) states which deductions are allowed. [15]
*47 Section 832(b)(6) provides that "expenses incurred" means "all expenses shown on the annual statement approved by the National [Association] of Insurance Commissioners," and provides that the term shall be computed as follows: To all expenses paid during the taxable year, add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the taxable income subject to the tax imposed by section 831, there shall be deducted from expenses incurred (as defined in this paragraph) all expenses incurred which are not allowed as deductions by subsection (c). Section 832(c) provides that "[i]n computing the taxable income of an insurance company subject to the tax imposed by section 831, there shall be allowed as deductions: (1) all ordinary and necessary expenses incurred, as provided in section 162 (relating to trade or business expenses) * * *." The controversy centers on the parties' interpretations of sections 832(b)(6) and 832(c), and whether those sections in conjunction with section 162 or the NAIC *48 statutory method of accounting control the timing of deducting commission expenses associated with deferred premium installments not yet paid. [16]
We have considered this same issue in Western Casualty & Surety Co. v. Commissioner,65 T.C. 897 (1976), affd. 571 F.2d 514 (10th Cir. 1978). [17] Petitioner here, as the taxpayer in Western Casualty, seeks to currently deduct such expenses under the NAIC statutory method and argues that this case is factually distinguishable from Western Casualty.[18] Petitioner, in the alternative, contends that the transactions meet the "all events *49 test." Respondent contends that Western Casualty governs, that in this instance use of the NAIC statutory method does not result in a clear reflection of income and that petitioner is not entitled to the deduction for its failure to meet the "all events test." We agree with respondent. This case is factually similar to Western Casualty in which a property and casualty insurance company, like Home, issued multi-year insurance policies and chose to include all deferred premium installments as premiums written in the year of issuance. Western Casualty, in accordance with NAIC instructions, currently deducted as expenses all commissions attributable to those premiums. In Western Casualty *50 we disallowed the deduction. [19] We determined that Western Casualty was an accrual basis taxpayer and we found that the all events test, as set forth in section 1.461-1(a)(2), Income Tax Regs., was not satisfied. [20] We found that Western Casualty was not liable to its agents for such commissions until the insured actually paid the agent the premium installment. We also reasoned that a current deduction for commissions attributable to deferred premium installments would result in a mismatching with related income items and distortion of income. [21]
*51 Petitioner contends that Western Casualty is distinguishable in three ways: (1) The policies in Western Casualty lapsed on mere nonpayment whereas the policies here continue until notice of cancellation is given; (2) Western Casualty maintained a reserve account (a liability account) for unearned premiums whereas none is maintained here; and (3) Western Casualty stipulated that it was an accrual method taxpayer, whereas Home maintains that it uses the "NAIC statutory method of accounting." We find petitioner's distinctions to be without a difference and we are not inclined to overrule our holding in Western Casualty.
Petitioner's distinctions go to the type of accounting method Home uses and the rules applicable thereunder. Petitioner fervently argues that it follows the "NAIC statutory method of accounting," and contends that the deduction at issue is allowable for Federal income tax purposes because it is a permissible method in completing the annual statement. Petitioner seeks to have the "NAIC statutory method of accounting" recognized as a controlling, separate alternative accounting method, a method which is not always in harmony with traditional cash or accrual *52 tax accounting concepts. [22] Petitioner concludes that the "NAIC statutory method of accounting" should be used to determine the taxable year in which deductions are to be allowed. Respondent argues that the commissions are not deductible currently because they have not yet been paid or incurred.Additionally, respondent contends that allowing the commissions to be expensed currently results in a mismatching of income and expense. We hold that for Federal income tax purposes, property and casualty insurance companies such as Home are governed by sections 831 et seq. and where the NAIC statutory method differs from sections 831 et seq., the latter must govern if a clear reflection of income does not result from the application of the NAIC statutory method. [23] We reach this conclusion after carefully considering both the Internal Revenue Code's statutory scheme (sections 831 et seq.) and the NAIC statutory method. [24]
*53 In order to hold for petitioner, we would have to find that in this instance, application of the NAIC statutory method results in a clear reflection of income. This we cannot do. Sections 832(b)(6) and 832(c) include the requirement that an expense must be "incurred" before it is deductible. (Petitioner refers to this as a "timing requirement.") The NAIC statutory method of accounting is basically an accrual method. Generally, sections 831 et seq. employ accrual accounting principles. Petitioner contends that the NAIC statutory method permits the deduction in question and that it is a method of accounting separate and apart from the cash and accrual methods of accounting used for tax purposes. Respondent argues that petitioner is on an accrual method as dictated by sections 831 et seq. in conjunction with section 162 and Internal Revenue Code sections outside of subchapter L. We hold that petitioner is on an accrual method of accounting, as modified by the requirements of sections 831 et seq.
A major disagreement of the parties concerns whether the timing, as opposed to the deductibility, is to be determined under the NAIC statutory method or the tax accounting principles *54 established outside of subchapter L. Both parties argue at length about whether section 162 (referenced in section 832(c)(1)) applies to limit expenses otherwise deductible under section 832(b)(6), as to their timing and type or as to type alone. Section 162(a), in pertinent part, limits allowable deductions to those that are "ordinary and necessary" and "paid or incurred during the taxable year." Petitioner argues that the reference to section 162 applies to the type of deduction allowable, not to the timing of the deduction. Respondent construes section 832(c) as limiting the deductions allowable to those that fulfill all requirements of section 162: deductions that are "ordinary and necessary" and that are "paid or incurred during the taxable year." Section 7701(a)(25) indicates that "paid or incurred * * * shall be construed according to the method of accounting upon the basis of which the taxable income is computed under subtitle A." (Emphasis added.) Yet, section 832(b)(6) also contains a separate "incurred" limitation. Under these circumstances and relying heavily upon our holding in Western Casualty, we find that petitioner must meet the timing requirements on this *55 deduction in the same manner as any other taxpayer under an accrual method of tax accounting. It seems clear that Congress did not intend that this deduction, which is not unique to the insurance industry or separately provided for in subchapter L, to be treated differently from other taxpayers subject to the Internal Revenue Code. Approval of the NAIC statutory method under these circumstances would result in allowing a deduction for Federal income tax purposes that would not normally be allowed under established cash or accrual tax accounting principles. Only on the rarest occasions are taxpayers allowed to deviate from established cash and accrual accounting concepts in computing taxable income, and then only if the method of accounting used clearly reflects income. See Bay State Gas Co. v. Commissioner,689 F.2d 1 (1st Cir. 1982), affg. 75 T.C. 410 (1980). A deviation from the established methods of tax accounting is not warranted in this case. [25]
*56 In reaching our conclusion we considered several factors. First, to hold otherwise would result in a lack of symmetry and resultant mismatching of income and expense. See Commissioner v. Standard Life,433 U.S. 148 (1977). Petitioner points to no reason why the deduction should be allowable besides the fact that the NAIC instructions provide for it and the accounting procedures are common to the industry. Moreover, the expenses in question are not unique to the insurance industry. Secondly, petitioner seems to fault the statutory scheme only when it has an adverse effect upon its tax liability. Petitioner is not heard to complain that its taxable income is based on premiums earned rather than premiums written; instead, it chooses to question only one side of the equation. This we cannot condone. [26]
*57 Respondent has adjusted petitioner's income with respect to commissions attributable to deferred premium installments not yet due. Respondent disallowed the deduction as not properly accruable until the commissions are actually paid. Petitioner, in the event that we did not find the NAIC statutory method to be controlling, contends in the alternative that the liabilities in question are fixed.Petitioner specifically contends that the policies in Western Casualty lapsed upon nonpayment whereas the policies here continue until notice of cancellation is given, and that Western Casualty maintained a reserve account whereas none is maintained here. We do not find these distinctions to be persuasive. Petitioner challenges respondent's disallowance as inconsistent with accrual accounting concepts, and complains that: (1) Respondent has raised no issue relating to petitioner's method for recording premium income as premiums written or deduction of commissions recorded as paid applicable to premiums required or elected to be paid in a single payment due on the inception date of the insurance policy (including commissions related to premiums due but uncollected by the end of the *58 taxable year on policies issued during the taxable year and providing for periods up to three years); (2) the proposed adjustment would require the creation of a hypothetical account on petitioner's books for commissions on deferred premium installments; and (3) respondent's position is incongruous because petitioner would have to report more income the first year if it received the first installment payment rather than the entire amount due. Respondent's proposed changes are consistent with accrual accounting principles. Commissions attributable to deferred premium installments not yet due should be disallowed as deductions if all of the events permitting accrual have not occurred during the taxable year in issue. Whether commissions attributable to prepaid multi-year policies are deductible currently, is not an issue in this case and we express no opinion on those deductions. Petitioner's "bookkeeping" argument does not address the issue and presents an equitable consideration which we find unpersuasive. Finally, petitioner's point regarding how much income it must report if it received the first installment payment rather than the entire amount due is also not at issue. *59 Before an expense may be accrued under accrual accounting principles, all of the events must have occurred which establish the fact of liability and the amount must be capable of being determined with reasonable accuracy. Sec. 1.461-1(a)(2), Income Tax Regs.[27]
It is well settled that a liability does not accrue as long as it remains contingent. United States v. Hughes Properties, Inc.,    U.S.    (June 3, 1986); Brown v. Helvering,291 U.S. 193, 200 (1934). A liability must be "final" ( Security Flour Mills Co. v. Commissioner,321 U.S. 281, 287 (1944)), "fixed and absolute" ( Brown v. Helvering,supra at 201), and "unconditional" ( Lucas v. North Texas Lumber Co.,281 U.S. 11, 13 (1930)). As previously stated, the deductions in Western Casualty *60 were disallowed because we found that the expenses failed the all events test. There we stressed that under the contract terms the insured was under no obligation to pay future installments. The insured's failure to pay premium installments as they became due resulted in cancellation of the policy. Thus, we found that the liability was not fixed. Petitioner alleges that the insured's liability for payment of premiums was fixed at the date of inception, subject only to the risk of nonpayment, and cites to a number of cases for the proposition that the risk of nonpayment by a purchaser does not defeat the current accrual of commissions on sales. [28] As we stated in Western Casualty, those cases, unlike the present case, concern taxpayers obligated to make future installment payments. The cases stand for the principle that a taxpayer's accrual of related commission expense deductions will not be disallowed simply because the commissions may never be paid due to the risk of collection. See Western Casualty,65 T.C. at 904. *61 According to the contract terms here, the insured could prospectively cancel the agreement at any time. Should this occur, although Home charged the insured at a higher rate for the lapsed time period, the agents received no commissions pertaining to the period beyond the cancellation date. [29] This does not amount to a liability "fixed and absolute," "final," and "unconditional." Although the amount that may be paid as commissions is fixed in amount, it is still contingent. [30]
*62 Finally, although petitioner states that it does not maintain a reserve account and the taxpayer in Western Casualty did, we fail to see how that factor should make a difference in this case. Due to concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Home and Indemnity were members of the affiliated group for which the consolidated returns were filed. Reference to Home includes reference to Indemnity unless otherwise noted. ↩
3. For Federal income tax purposes, Home was a property and casualty insurer and subject to the provisions of subchapter L, part 3, secs. 831 et seq.↩
4. Reference to the NAIC includes reference to its predecessor, the National Convention of Insurance Commissioners. ↩
5. Since before 1921, the NAIC has required insurance companies, such as Home, to use the so called "statutory method" for completion of the annual statement. Under this method, as provided in the NAIC annual statement instructions, insurance companies may account for policies having a term of more than one year in one of two ways. The company may elect to record the annual installment as a premium written in the calendar year it becomes due or in the calendar year the policy was issued, as if the entire policy were prepaid. All commissions attributable to amounts included as premiums written must be recorded as paid expenses for the year of inclusion. The instructions also provide that policies having a term of one year or less are to be treated as if the premiums are prepaid.↩
6. If the insured chose the latter, the total payment sometimes included a handling charge.↩
7. The actual percentage varied depending on the type of coverage. ↩
8. The agreement between Home and its agents imposed a duty of collection of premiums on the agents with a remittance time limit of 60 days after the recording of the premium on Home's books. If Home collected the premiums from the insured, the agent received no commission.↩
9. The insurance policy could be canceled prospectively by either the insured or Home. The insured could cancel the policy at any time by giving Home notice and returning the policy or a lost policy form. Mere nonpayment of premiums was not enough to cancel the policy. Normally, the insured notified the agent and returned the policy. If the insured canceled the policy, Home computed the earned premium using the short-rate table. Home was required to refund any excess of paid premium above the customary short-rate for the expired time. The short-rate included a penalty, inversely related to the length of time unexpired on the policy. Home could cancel the policy at any time by giving the insured a five or ten days' written notice of cancellation. One circumstance under which Home generally would cancel a policy was nonpayment. If Home chose to cancel the policy, the cancellation was pro rata. In the event of cancellation, Home was required to tender the excess of premium paid above the pro rata premium for the expired time on demand, unless Home had already tendered that amount with the written notice of cancellation. Home remained responsible for losses covered by the insurance policy, and the insured obligated to pay the premium, until the policy was canceled.↩
10. The expenses-incurred account consisted of other expenses (like unpaid loss adjustment expenses) besides commission expenses. ↩
11. For NAIC purposes, deferred premium installments may be included in the premiums-written account, and Home so elected. The NAIC instructions require that all commissions associated with premiums included in the premiums-written account be expensed currently. Including deferred premium installments in the premiums-written account had economic consequences to Home, apart from those associated with Federal income tax (and indirect Federal income tax consequences through state and local tax deductions); for example, Home's state and local taxes and franchise fees were based on premiums written. ↩
12. Accordingly, no reserve or liability account for commissions with respect to deferred premium installments was contained in the annual statement.↩
13. Subchapter L of the Internal Revenue Code of 1954 covers the income taxation of insurance companies. Secs. 801 through 826 cover specific life, mutual and certain other specifically enumerated types of insurance companies. Secs. 831 and 832↩ apply to all other insurance companies, including property and casualty insurers. 14. The issue under consideration (the timing of the deductibility of commissions attributable to deferred premium installments), however, is not unique to the property and casualty insurance industry. Although the insurance industry may be distinguished from other businesses (because premiums from the sale of insurance policies come first and the major costs and losses come later) the issue at hand does not result from this unique aspect of the insurance industry.↩
15. Taxable income is defined as "the gross income as defined in subsection (b)(1) less the deductions allowed by subsection (c)." Gross income, as defined in sec. 832(b)(1)↩ includes, inter alia, the combined gross amount earned from investment income and underwriting income computed on the basis of the underwriting and investment exhibit of the annual statement and gain from the sale or other disposition of property. Underwriting income is defined as follows: "the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred." "Premiums earned" is computed as follows: "From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance * * *, and unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year."
16. Secs. 831 et seq. incorporate accrual-type accounting concepts, and the NAIC instructions require the use of the "accrual, i.e., earned and incurred basis" as the method of accounting, for completion of the annual statement. With respect to the specific item at issue, however, the NAIC annual statement unconditionally allows deductibility whereas, in this case, application of secs. 832(b)(6), 832(c) and 162↩ and traditional cash and accrual accounting concepts may not.
17. All subsequent references to our opinion in the noted case will be made to Western Casualty.↩
18. Petitioner here, however, does not argue that the annual statement required by the NAIC governs for Federal income tax purposes. Rather, petitioner contends that the NAIC's statutory method of accounting is a proper method of accounting for tax purposes. Petitioner concludes that the statutory method controls the timing of deductions, thus permitting the deduction in question.↩
19. Actually, Western Casualty↩ has been litigated and decided two times, once under the Revenue Act of 1926, 44 Stat. 9, and once under the 1954 Code. In both instances, the taxpayer sought to employ their statutory reporting method for tax purposes and in both instances the taxpayers were unsuccessful. 20. The regulation, in pertinent part, provides: Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * [T]he fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. ↩
21. The mismatching of income results from taxable income being based on premiums earned and the annual statement being based on premiums written.↩
22. As discussed later, petitioner alternatively argues that the expenses in question would also be allowable under an accrual method.↩
23. Our decision here also comports with Commissioner v. Standard Life & Accident Insurance Co.,433 U.S. 148↩ (1977). The issue decided in that case involved the extent that deferred and uncollected life insurance premiums were includable in reserves, assets, and gross premium income, as those concepts were used in the Life Insurance Company Income Tax Act of 1959. 24. Petitioner relies on Rev. Rul. 55-580, 1955-2 C.B. 282, for the proposition that the NAIC statutory method of accounting determines the timing for the deductions at issue. We disagree. Rev. Rul. 55-580 allowed current deductions for unpaid loss adjustment expenses (sec. 832(b)(5)(B) allows a deduction for unpaid losses). Rev. Rul. 55-580 does not apply to these facts. Unpaid losses are unique to the insurance industry; agents commissions are not. Accordingly, the rationale for allowing unpaid loss estimates (and the expenses associated therewith as well) to be currently deductible does not necessarily apply to allow the deductibility of the expenses at issue now. We also note that Rev. Rul. 70-552, 1970-2 C.B. 141, includes the position that sec. 832↩, in effect, places casualty insurance companies on an accrual method of accounting with respect to income and deductions, thus allowing expenses to be deductible in the year that they fulfill the all events test.
25. A taxpayer's method of accounting is a permitted method if it comports with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the regulations. Sec. 1.446-1(c)(1)(ii), Income Tax Regs.; Public Service Co. of New Hampshire v. Commissioner,78 T.C. 445 (1982). Sec. 446(a) generally provides that a taxpayer shall compute income by the method of accounting and basis by which the taxpayer regularly keeps the books. Subsection (c) provides that a taxpayer may compute its taxable income under any of the following methods: Cash receipts and disbursements, an accrual method, any other method permitted by subchapter E (secs. 441 through 483), or any of the foregoing methods permitted under the regulations. Subsection (b) allows the Commissioner to recompute a taxpayer's income if the taxpayer's method does not clearly reflect income. The Commissioner has wide discretion in determining whether a particular method of accounting should be disallowed as not clearly reflecting income. Thor Power Tool Co. v. Commissioner,439 U.S. 522, 521 (1979). Petitioner contends that the accounting procedures it uses are commonly used in the industry, and that it has consistently followed them. These are factors to be considered, but they are not determinative. Public Service Co. of New Hampshire v. Commissioner,supra at 455; see also Coors v. Commissioner,60 T.C. 368, 395 (1973) ("[a] failure to clearly reflect income over many years cannot be justified on the grounds of tenure"). Another factor to be considered in determining whether an accounting method clearly reflects income is whether that accounting method conforms to generally accepted accounting principles. See sec. 1.446-1(a)(2), Income Tax Regs.; Public Service Co. of New Hampshire v. Commissioner,supra↩ at 455. During the years at issue, the American Institute of Certified Public Accountants required a financial statement footnote reflecting that acquisition expenses (including commissions paid to agents) had been charged as paid (instead of accrued over the life of the policy contract).
26. Although not applicable here, the Tax Reform Act of 1986 would increase property and casualty insurance company income by 20 percent of the annual increase in unearned premiums. Also, 20 percent of the unearned premium reserve outstanding at the end of the most recent taxable year beginning before Jan. 1, 1987, is included ratably over a six-year period commencing with the first taxable year beginning after Dec. 31, 1986. See H. Rept. 99-841, Vol. II, pp. 11-355 (1986).↩
27. See also United States v. Anderson,269 U.S. 422, 441↩ (1926), where the all events test was first enunciated.
28. See, e.g., W.S. Badcock Corp. v. Commissioner,491 F.2d 1226 (5th Cir. 1974); Central Cuba Sugar Co. v. Commissioner,198 F.2d 214 (2d Cir. 1952), cert. denied 344 U.S. 874 (1952); Ohmer Register Co. v. Commissioner,131 F.2d 682↩ (6th Cir. 1942).
29. Additionally, we note that Home itself could cancel an insured's policy simply by giving notice. It seems anomalous to allow Home to accrue a deduction when the expense in question later can be avoided entirely at Home's election. ↩
30. Petitioner, in its reply brief, argues that the liability in question was fixed, and that cancellation of the policy is a condition subsequent to the fact of liability. Petitioner cites several cases in support of its proposition, including Ohio River Collieries Co. v. Commissioner,77 T.C. 1369 (1981); Buckeye International, Inc. v. Commissioner,T.C. Memo. 1984-668; and Wien Consolidated Airlines, Inc. v. Commissioner,60 T.C. 13 (1973), affd. 528 F.2d 735 (9th Cir. 1976). We disagree. First, the cases petitioner cites largely concern parties' obligations under state regulatory law, and are factually distinguishable. Here petitioner's obligation to use the NAIC statutory method to file its annual reports did not "fix" in time or amount the commissions on deferred premium installments. Nor did the regulatory bodies require that petitioner utilize the NAIC statutory method for any other purpose than reporting to those regulatory bodies. Secondly, although petitioner correctly notes that we have interpreted Wien Consolidated Airlines, Inc. v. Commissioner,supra, as requiring us to distinguish between conditions precedent and conditions subsequent in determining whether a liability is fixed (see Buckeye International, Inc. v. Commissioner,supra at 380), under these facts, we cannot find that the parties' rights were sufficiently fixed at the contract's inception date so as to allow them a current deduction for the commissions in issue. Even if the prospective cancellation provisions were correctly characterized as a condition subsequent, thus "fixing" the liability, petitioner has not proved that the amounts in question have been reasonably ascertained, and that the condition which could terminate petitioner's liability (cancellation) can be characterized as one unlikely to occur. Wien Consolidated Airlines, Inc. v. Commissioner,supra↩ at 17.